## SATER C. COMER

*v.*

## ALICE A. COMER *et al.*

*Filed at Springfield March 23, 1887.*

1. EVIDENCE—*possession of bonds, as presumptive evidence of ownership—and of evidence in rebuttal of such presumption.* The fact that a person, for several years before his death, had the undisputed possession of a number of United States government bonds, and collected and used the interest accruing thereon, affords presumptive evidence that he was the absolute owner thereof. But such evidence of ownership may be overcome by proof explaining the possession, and showing he had but a life interest in the bonds, and held them under such title.

2. So where a widow, for many years after her husband's death, had the possession of $6000 of government bonds which had belonged to him before his death, and she collected and used the interest accruing thereon, up to her death, without objection on the part of any one, this was held presumptive evidence of her ownership; but proof of her frequent declarations, made at various times while she held the bonds, and at one time shortly before her death, that she was to have only the interest on the same as long as she lived, and that on her death the bonds were to be divided among the heirs of herself and husband, was deemed sufficient to overcome the presumption of ownership arising from such possession of the property.

3. SAME—*evidence as to a gift by a husband to his wife.* The declaration of a husband, before his death, that he had given his government bonds to his wife, is not sufficient to show title in her, when it appears that he referred to a letter or writing, in the nature of a testamentary disposition, which is void, because not properly attested, as a will, as the evidence of the gift.

4. SAME—*declarations of party—whether inconsistent with his claim of title.* Where a husband attempted, by a void writing, to give his wife the right to the interest accruing on a lot of government bonds during her life, after which he died, leaving two sons as his only heirs, the declaration of one of the sons that the bonds belonged to his mother, there being at the time no question of title raised, and no one having acted upon the faith of such admission, was held not sufficient evidence against his heirs to show absolute title in his mother, and give her the right to devise or bequeath the whole of the bonds to her other son. The bonds might well be spoken of as the mother's, she, by consent of both sons, being allowed to receive the interest thereon during her life.

5. DISPOSITION OF PROPERTY—*whether an executed contract, or of a testamentary character.* If an attempted or intended disposition of property be of a testamentary character, not to take effect in the owner's lifetime, such disposition will be inoperative unless declared in writing, in conformity to the statute relating to wills.

6. A person having government bonds on deposit with his bankers, placed in their hands a writing, directed to them, as follows: "Gents:—Of the seven-thirty government bonds of mine in your hands, I hereby assign to my wife, H. C., $6000, she to draw the interest of the same, you keeping possession of the same. * * * My wife to draw the interest until her death, have no control of the principal, so far as disposing of them is concerned,— the bonds at my death to revert to my heirs. The above assignment to take effect at my death, I controlling them in the meantime." It was not attested as a will: *Held,* not an absolute disposition of the property, or executed contract, but rather an executory contract, testamentary in its character, and void, because not executed according to the requirements of the statute.

7. SAME—*disposition of an estate by agreement, independently of the Statute of Descents.* It is competent for the widow and heirs of a deceased person to make a different disposition of the personal property left by him, from that provided by the Statute of Descents, and when they do so by contract duly made, the disposition agreed upon will bind them.

8. A person died intestate, leaving a widow and two sons, his only heirs, and $6000 of government bonds, and leaving no debts: *Held,* that the widow took, by law, one-third of the bonds, and each of his sons one-third. The three, however, entered into an agreement that the widow should receive all the interest on the bonds during her life, and that at her death the bonds should be equally divided between the sons: *Held,* that the agreement was a valid and binding one.

9. CONTRACT—*two papers as part of the same contract, one of them a copy.* When two persons enter into a written contract between themselves, and attach thereto a copy of another writing relating to the subject matter of the contract, such copy may be regarded as a part of the written contract, and is admissible as original evidence.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Hancock county; the Hon. WILLIAM MARSH, Judge, presiding.

Messrs. MANIER & MILLER, and Messrs. HOOKER & EDMUNDS, for the appellant:

The long undisputed possession of the bonds by Mrs. Comer affords *prima facie* evidence of her ownership, and casts the burden of proof on those denying her rights.

The court below erred in admitting secondary evidence of the contents of the letter of Samuel Comer to George C. Anderson & Co., without any proof of the loss or destruction of the original.

The recitals in the release given by Mrs. Comer to the bank, may be regarded as the declarations of the bankers. She was compelled to sign such paper as they demanded, as a condition for the surrender of her bonds. This paper, so signed by her and Sylvester Comer, does not, of itself, create any trust. The recital of the release refers to the letter of Samuel Comer of December 28, 1866, to the bankers, as creating the alleged trust. That letter fails to create a trust, or if it creates any, it is imperfect and executory, and being executory, and without a valuable consideration, will not be enforced by a court of equity. A voluntary trust will not be enforced. *Clark* v. *Lott,* 11 Ill. 105; Hill on Trustees, *83.

The attempted disposition of the bonds was testamentary, not to take effect until after the donor's death, and therefore void for want of proper attestation. *Badgley* v. *Votrain,* 68 Ill. 25; *Olney* v. *Howe,* 89 id. 559; *Cline* v. *Jones,* 111 id. 563; *Basket* v. *Hassell,* 107 U. S. 602; *Carr* v. *Silloway,* 111 Mass. 124; 1 Jarman on Wills, (5th Am. ed.) 18-20.

By the release to the bank, Sylvester L. Comer released the trust, if there was one. *Henderson* v. *Sherman,* 47 Mich. 274; Hill on Trustees, *579-581.

The witness Stewart testifies to the declaration of Samuel Comer, that he had given all his bonds to his wife, to make her independent,—to do with them as she pleased; and Sylvester always spoke of the bonds as his mother's.

The heirs recognized and admitted her right to the bonds, and never made any objection to her use of them. Even if Samuel Comer never gave them to her, and they became assets of the estate, she had a right to them, as widow, as part of her specific allowance, and as her dower. *York* v. *York,* 38 Ill. 525; *Kellogg* v. *Graves,* 5 Ind. 501; *Cross* v. *Casey,* 25 Ill. 562.

Her interest in the estate was a sufficient consideration for the release of the bonds to her by the heirs.

Messrs. MACK, BAIRD & MACK, for the appellees:

The copy of Samuel Comer's letter attached to the release of the bankers, was original evidence, and properly admitted. 1 Greenleaf on Evidence, secs. 23, 97, 189; *Carver* v. *Jackson,* 4 Pet. 83.

The admissions of Harriet Comer, in the release given by her and Sylvester, show that she only claimed a life estate in the bonds, and amount to a declaration of trust, which is binding on her and her privies. *Welsch* v. *Savings Bank,* 94 Ill. 207; Bigelow on Estoppel, 573.

The intention of Samuel Comer, in his letter to Anderson & Co., to create a trust, is manifest. Equity looks at the intent rather than the form, and treats that as done, which, in good conscience, ought to be done. 1 Pomeroy's Eq. Jur. sec. 378.

That his letter amounts to a declaration of trust, see *Otis* v. *Beckwith,* 49 Ill. 121; *Ray* v. *Simmons,* 11 R. I. 266; *Hill* v. *Stevenson,* 63 Maine, 364; *Martin* v. *Funk,* 75 N. Y. 134;

*Howard* v. *Savings Bank,* 40 Vt. 597; *Blanchard* v. *Sheldon,* 43 id. 512; *Blasdel* v. *Locke,* 52 N. H. 238; *Minor* v. *Rogers,* 40 Conn. 512.

Mrs. Comer, by her written agreement with the bank and Sylvester, and her subsequent acts and declarations, is estopped from denying Sylvester's right to half of the principal of these bonds. *Welsch* v. *Savings Bank,* 94 Ill. 181; *Byrne* v. *Morehouse,* 22 id. 603; *Smith* v. *Whittaker,* 11 id. 417; *Herrick* v. *Swartwout,* 72 id. 340; *Gridley* v. *Hopkins,* 84 id. 528.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Alice A. Comer, and others, administratrix and heirs of Sylvester L. Comer, deceased, against Sater C. Comer and the Hancock County National Bank, for the purpose of determining the rights of the parties, and for a division of $5000 of United States bonds, and a note and mortgage of $1000, which were on deposit in the bank.

Samuel Comer died intestate in July, 1867, leaving a widow, Harriet Comer, and two sons, Sylvester L. and Sater C. Comer, as his only heirs. He left an estate of $25,000, and no debts. No letters of administration were issued upon his estate. Prior to his death, Samuel Comer owned United States bonds deposited with George C. Anderson & Co., bankers, of Keokuk, Iowa, and on the 28th day of December, 1866, he placed in the hands of his bankers, a writing, which was as follows:

"HAMILTON, *December 28, 1866.*
"*George C. Anderson & Co.:*

"GENTS—Of the seven-thirty government bonds of mine in your hands, I hereby assign to my wife, Harriet Comer, $6000, she to draw the interest of the same, you keeping possession of the same, and when matured, to convert into five-twenty government bonds, first series, to remain in your

hands, my wife to draw the interest until her death, have no control of the principal, so far as disposing of them is concerned,—the bonds, at my death, to revert to my heirs.

"The above assignment to take effect at my death, I controlling them in the meantime.

(Signed)                Samuel Comer.

("Will you be kind enough to file this with my bonds?")

The bonds were in the hands of Anderson & Co. when Samuel Comer died, and remained with them until the firm was dissolved, by the death of Anderson, when they passed into the hands of Bower, Barclay & Co., successors to Anderson & Co. There they remained until the 29th day of June, 1871, when Sylvester L. and Harriet Comer took the bonds from Bower, Barclay & Co., and deposited them in the Hancock County National Bank, at Carthage. Upon receipt of the bonds, the following agreement was executed:.

"Whereas, Samuel Comer, deceased, before his death, deposited with George C. Anderson & Co., $6000 in government bonds, under the trust and conditions specified in the paper, (a copy of which is hereto attached,) for the benefit of Harriet Comer, his wife, during her life, with remainder of the principal to the heirs of said Samuel Comer : Now, for the purpose of other and better investment, and for a valuable consideration to each of us moving, it is agreed by the said Harriet Comer, and by Sylvester L. Comer and Sater C. Comer, the only heirs of said Samuel Comer, that the said George C. Anderson & Co., and their successors, and all members of said firm, are hereby released from said trust; and the said Bower, Barclay & Co., with whom said bonds are on deposit, are authorized and empowered to deliver and pay over to the said Harriet Comer the said $6000 of bonds.

"Witness our hands, this June 29th, 1871.

                            Harriet Comer,
Witness: R. C. Parrott.            S. L. Comer."

A copy of the writing of Samuel Comer, of December 28, 1866, was attached to the agreement. Harriet Comer received the interest on the bonds while living. On the 29th day of April, 1883, she died, leaving a will, under which Sater C. Comer is sole legatee of her estate.

It is claimed by complainants, that on the death of Samuel Comer one-half of the bonds passed to Sylvester L. Comer, subject to the right of Harriet Comer to receive the interest during her life, and that upon her death one-half thereof became the absolute property of the heirs of Sylvester L. Comer, he having died intestate; while on the other hand it is claimed, that Harriet Comer was the absolute owner of the bonds, and the title to the same passed to Sater C. Comer, under the will of his mother. As Sater C. Comer set up title to all the bonds, and the note and mortgage, under the will of Harriet Comer, his mother, it devolved upon him to establish, by the evidence, that she owned the property at the time of her death. The fact that Harriet Comer had the undisputed possession of the bonds for several years before her death, and used the interest accruing thereon, may be regarded as presumptive evidence that she was the owner; but such evidence of ownership may be overcome by proof explaining that she had but a life interest in the property, and held under such title. Upon this point complainants introduced four witnesses, who, at different dates, and some of them on various occasions, had conversations with Harriet Comer in regard to the bonds, and she stated that she was to have the interest as long as she lived, and after her death the bonds were to be divided among the children. This evidence may be regarded as sufficient to overcome the presumption of ownership, which arose from Harriet Comer's possession of the property. If she was the absolute owner, it is strange that soon after her husband's death she declared that she was only to have the interest on the bonds. This was repeated on various occasions, and reiterated only a short

time before her death. Her declarations and conduct are inconsistent with the theory that she owned the bonds, and had the right to dispose of them as she might think proper.

But it is. said, the title of Harriet Comer was established by the declarations of Samuel Comer, in his lifetime. One witness testified, that Samuel Comer stated to him, a short time before his death, that he had given the bonds to his wife. But it is apparent, from the cross-examination of the witness, that the terms of the gift were embraced in the letter of Samuel Comer, addressed to George C. Anderson & Co., which, if a binding obligation, shows a manifest intention to give her only the interest on the bonds during her life.

Much reliance is placed in the declarations of Sylvester L. Comer, at the time the bonds were deposited in the bank at Carthage, to defeat his title and establish title in Harriet Comer. Mr. Ferris, the president of the bank, testified as follows: "On the 29th day of June, 1871, Mrs. Harriet Comer, and her son, Dr. Sylvester L. Comer, came into the Hancock County National Bank of Carthage, Illinois. The doctor says, 'Ma has some government bonds, which she wants to leave with you.' She handed me a package of bonds out of her satchel. He said, 'She wants to deposit some money, also.' I said we would not enter the bonds in the same way with the deposit of money,—that we would keep the bonds without charge, and would deliver the same bonds when called for. He said, 'You enter it in the back part of the pass-book, and make a memorandum instead of a receipt,—ma may lose the receipt.' I entered a credit of $250 with her on the first page, and a memorandum of the bonds on the last page."

When all the circumstances are considered, we do not regard this evidence of controlling importance. The question of title was not up for discussion or determination. Mrs. Comer was rightfully in the possession of the bonds. They belonged to her during life, and the statement made by Sylvester, to the effect that they were her bonds, was not inconsistent with

his claim of title to one-half thereof after her death. In one sense they were her bonds, and it was proper for Sylvester to speak of them as such, although the title, after her death, was in his brother and himself. Had the question of title been up for consideration, or had any right been acquired on the faith of Sylvester's statement, a different question might be presented; but such was not the case.

It is claimed, on behalf of complainants, that a trust was created by the writing of December 28, 1866, under which Harriet Comer was to have the interest on the bonds during her natural life, and upon her death they were to be equally divided between Sylvester and Sater Comer, heirs-at-law of Samuel Comer. We think it manifest, from the reading of that writing, that Samuel Comer intended to give his wife, after his death, the interest on the bonds during her life, and at her death the bonds were to be equally divided between his two sons; but whether the writing can be sustained as an instrument creating a trust, presents a serious question. We think it may be declared a general rule, that if the intended disposition of property be of a testamentary character, not to take effect in the testator's lifetime, such disposition will be inoperative unless declared in writing, in conformity to the statute relating to wills. (Perry on Trusts, sec. 92.) Here there was no absolute disposition of the bonds by the writing, but Samuel Comer retained the control and disposition. The last clause of the agreement leaves no room for doubt on this point. It is as follows: "The above assignment to take effect at my death, I controlling them (the bonds) in the meantime." The only reasonable construction which we are able to place on the writing is, that at the death of the party who executed it, the property should be disposed of in a certain specified manner. This is not an absolute disposition of property— an executed contract—but rather an executory contract, testamentary in character.

If we are correct in this, the bonds were unaffected by the writing, and upon the death of Samuel Comer passed as intestate property—one-third to the widow, Harriet Comer, and two-thirds to Sylvester and Sater Comer. But no reason is perceived why these parties might not make such disposition of the bonds as they thought proper, and we think the evidence shows clearly that they did contract among themselves that the widow should have the interest on the bonds during her life, and at her death they should be divided between Sylvester and Sater Comer. Thomas Ruggles testified, that shortly after the death of Samuel Comer, the two sons of the deceased, Sylvester and Sater, executed a contract in writing, in relation to the disposition of the bonds. "The agreement set forth that there were some United States bonds in George C. Anderson & Co.'s bank, to the amount of $4000 or $5000 or $6000. I don't remember the exact amount. The agreement was, that they were to remain on deposit in George C. Anderson & Co.'s bank, and that their mother was to draw the interest on those bonds, and neither of them was to interfere with it during her lifetime. The agreement was deposited with me." The witness also testified, that after Anderson's death they came and said they wanted to remove the bonds and deposit them somewhere else. But this is not all. When the bonds were removed, Sylvester and the widow, Harriet Comer, executed a written contract, of date June 29, 1871, which makes the letter of December 28, 1866, a part of the contract, where the same disposition of the property is agreed upon. By these two agreements, all three of the parties agreed that the widow should have the interest during life, and at her death the bonds should be divided. Is there any reason why these contracts should not be enforced? They were deliberately made, based upon a sufficient consideration, and we are aware of no reason why the contracts thus made should not be enforced.

It is insisted, that a copy of the writing of December 28, 1866, was not competent evidence, without first accounting for the loss of the original. The copy put in evidence was attached to the contract of June 29, 1871, by Harriet Comer and Sylvester Comer, and thus made a part of that agreement, and as a part of that contract it may be regarded as original, and not secondary, evidence.

In conclusion, we are satisfied that the judgment of the Appellate Court was correct, and it will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON concurs in the conclusion, with the exception that he thinks on the death of Samuel Comer the two sons took each a one-third interest in the bonds, and the widow, under our Statute of Descents, took a one-third interest in them as her absolute personal estate, and she having devised all her interest in the bonds to Sater Comer, makes his interest in them a two-thirds interest, and the interest of Sylvester Comer's representatives, a one-third interest.