HENRY M. BARNUM, Exr.

*v.*

PERMELIA E. REED.

*Filed at Ottawa January 22, 1891.*

1. ADMINISTRATION OF ESTATES — *assets — promissory notes — certificates of deposit.* Promissory notes and certificates of deposit payable to a person are *prima facie* assets of the payee's estate, and unless said person has in his lifetime made a valid disposition of the same, his executor or administrator will be entitled to the same.

2. GIFT—*elements of a gift—donatio mortis causa—evidence.* The law requires that a gift, whether direct or in trust, shall be established by clear proof, and that no uncertainty shall exist either as to the subject or object of the gift.

3. Where property of a deceased person is claimed by either a direct gift or through the medium of a trustee, the burden of proof will rest upon such claimant to establish the gift.

4. Declarations of a person a few days before death, that a sister should have pay for all her trouble in taking care of the declarant, and that she should have all her personal effects, are inadmissible in evidence for the purpose of showing what such person in fact did in respect to her property, by will or by gift.

5. The act or acts constituting a gift must be consummated, and not remain incomplete or rest in mere intention; and this is the rule whether the gift is by delivery, only, or by the creation of a trust.

6. *Donatio mortis causa* must be a completed and executed gift, the same as in the case of a gift *inter vivos.* If the gift does not take effect as an executed and completed transfer to the donee, either legally or equitably, during the life of the donor, it is a testamentary disposition, good only when made by a valid will.

7. To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee, and it must be irrevocable. In this respect alone does a gift *causa mortis* differ from one *inter vivos*.

8. The donor must part with all control of the property in order to make a valid gift. If he reserves any right or title the gift will not be complete.

9. TRUST—*incomplete in its creation—whether equity will give its aid.* Where the owner of property proposes to make one the trustee of the same, and the property is a legal estate, capable of legal transfer and delivery, the trust will not be perfectly created unless the legal title is actually transferred to or vested in the trustee. It is not enough that the owner executes a paper purporting to pass it, if in fact the paper does not have that effect.

10. A court of equity will not aid or perfect a defective gift. If legally made, by a transfer of the legal title to the trustee, it will be upheld and enforced in equity; but if the gift is imperfect or incomplete, a court of equity can not convert it into a declaration of trust on account of such imperfection, and thus give it effect.

11. Nor will a court of equity lend its aid to establish a trust at the instance of mere volunteers. If the transaction on which a voluntary trust is attempted to be established is still executory or incomplete, the court will decline all interference in the matter.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mary L. Davis died April 8, 1889, leaving a will, dated July 25, 1887, and duly probated May 2, 1889. By the will a farm of two hundred acres, in Stephenson county, was devised to Permelia E. Reed, sister of the testatrix, for life, with the remainder to her four children, and also certain chattel property. After the payment of certain specific legacies the testatrix gave the remainder of her estate, in equal parts, to Permelia E. Reed and John and Elizabeth Davis, (children of John A. Davis, deceased,) the latter of whom was a brother of the testatrix' late husband. This bill was filed by Barnum, executor of said will, against Edward P. Barton and Permelia E. Reed. No question arises as to the will, or its construction, and Mrs. Reed has possession of the farm and chattel property devised to her.

The testatrix, in her lifetime, was the owner of two promissory notes, each for the sum of $2000, payable to her own order,—one made by George P. Kingsley, dated November 13, 1884, due in one year from date, with interest at seven per cent; and the other made by Edward P. Barton, the defendant, dated May 28, 1888, and due in one year from its date, bearing interest at eight per cent. Also, three certificates of deposit in the Second National Bank of Freeport, payable to testatrix' order, upon their return, properly endorsed,—one for $1700, one for $60 and one for $90,—and $50 in money. These notes, certificates of deposit, and the sum of $50 in money, she sent, on April 1, 1889, to said Barton, enclosed in a letter, as follows:

"ROCK CITY, *Apr. 1st,* '89.

"*Hon. E. P. Barton*—I may not live many days or hours, and so write to you at once,—a few words at a time, as I can. Enclosed you will find your note, Kingsley's note, and the certificates on the bank. The interest is not due until May, and about the same time; but I send them now, because they are safe with you, and I can give you directions now. I wish you to take enough of the interest money, and the $50 which you will find enclosed, to bring the new certificate up to $2000, and if I am dead,—of which you will be duly apprised,—draw it in my sister's name, Mrs. Permelia Estes Reed, and send the interest, and the notes, and interest on them, to her, as long as they continue, and when they are paid, put them in the bank and send the interest to her. The remainder of the interest, due in May, send to me, if alive; if not, to her. If I was strong enough I would entirely revise my will. Send me word if you get these papers and this money safely, so it may be off my mind. Good-bye.

Res'y, M. L. DAVIS."

This letter, and its contents, Barton received on the day of its date, and the next day replied as follows:

"Mrs. Mary L. Davis :        "Freeport, Ill., *April 2, 1889.*

"*Dear Friend*—I received by yesterday's mail, from you, certificates of deposit to you from Second National Bank :

| | | | | |
|---|---|---|---|---|
| 1st. | Certificate for | $1700; | date, | Nov. 23d, 1888. |
| 2d. | "       " | 60; | " | Dec. 6th, 1888. |
| 3d. | "       " | 90; | " | Jan. 5th, 1889. |
| 4th. | Note to you from me, | 2000; | " | May 28, 1889. |
| 5th. | Note to you from G. P. Kingsley, | 2000; | " | Nov. 18, 1884. |
| 6th. | Cash, | 50; | | |
| | Total, | $5900 | | |

"Received same to collect interest, when due, on the notes in May next, and on the $1700 certificate, and to return to you, if alive, the two notes, a certificate of Second National Bank for $2000, and the balance of the money. If you are dead when the interest matures, in May, then I am to follow your letter of instructions in favor of Mrs. Permelia Estes Reed.

"I am sorry to learn that you are feeling so uncertain of life. The darkest time is just before the day. I hope you will recover at least your usual health.

Yours,        E. P. Barton."

The notes and certificates of deposit were not assigned or transferred, otherwise than by delivery to Barton. The letter above given contains the only instructions or directions Barton received in reference to the property, and he claims no right to hold the same other than that to be found in Mrs. Davis' letter, and his reply thereto. The executor made demand on Barton for the property, as assets of the estate. Mrs. Reed also claimed the property. Barton has been and is willing and ready to deliver the same to the party entitled thereto, but refused to pay the same over to the executor. Appellant, as executor, brought this suit against Barton and Mrs. Reed, to have the same declared assets of the estate, and delivered to him by Barton. The bill alleged the foregoing facts, and that Barton was the county judge of Stephenson county.

The answer of Barton admitted the material statements contained in the bill.

Mrs. Reed answered, admitting the material facts, but denied that the property was assets of the estate, and insisted that by virtue of said letter, and Barton's reply, she was the owner of the property as a gift from her sister, or that said letter and reply proved it to be a trust fund in the hands of Barton, for her benefit. It was further set up in her answer, that her brother, John Estes, and herself, were the only heirs-at-law of Mrs. Davis; that she nursed her sister, Mrs. Davis, during her last illness, and before, and that in conversation between them the night before the letter to Barton was written, her sister promised to give her the property for her services. The answer concluded by the prayer that it be taken as a cross-bill, and that the property be declared her property.

On the hearing the circuit court rendered a decree declaring the property to be assets of the estate, and directing Barton to deliver the same to the executor. From this decree Mrs. Reed alone appealed to the Appellate Court, where the decree was reversed, and the cause remanded to the circuit court, with instructions to dismiss the original bill for want of equity, and to grant the relief prayed for by Mrs. Reed in her cross-bill. The executor prosecutes this appeal.

Mr. HENRY C. HYDE, for the appellant:

There seems to be but one thing which, in the making of a gift *mortis causa*, distinguishes it from a gift *inter vivos*, viz., it must be made in anticipation of death near at hand. In every other respect the same things are essential in making both gifts. But after a gift *mortis causa* has been made as complete and perfect, in all respects, as is required in the case of a gift *inter vivos*, then the law attaches to the former gift three conditions which do not apply to the latter, viz.: it can be reclaimed by the donor before his death; his recovery from the impending peril revokes it; and it is revoked if the donor

survives the donee. But all the authorities agree that the gift must be executed—not executory. The donor must part with the subject of the gift, and divest himself of all present dominion and control over it as owner. The right, legal or equitable, which had been in the donor, must, *eo instanti* of the gift, pass from him and become vested in the donee.

A gift made, by its terms, to take effect after the death of the donor, can not be sustained as a gift *mortis causa*. *Basket* v. *Harrell*, 107 U. S. 602; *Barnes* v. *People*, 25 Ill. App. 136; *Cline* v. *Jones*, 111 Ill. 563; *Comer* v. *Comer*, 120 id. 420; *Walter* v. *Ford*, 74 Mo. 195; *McCord's Admr.* v. *McCord*, 77 id. 166; *Gano* v. *Fisk*, 43 Ohio St. 462; *Young* v. *Young*, 80 N. Y. 422; *Martin* v. *Funk*, 75 id. 134; *Hatch* v. *Atkinson*, 56 Me. 324; *Daniel* v. *Smith*, 64 Cal. 346; *Walsh's Appeal*, 122 Pa. 177; *Newton* v. *Snyder*, 44 Ark. 42; *Nichols* v. *Adams*, 2 Whart. 17; *Gass* v. *Simpson*, 4 Cold. 294.

Gifts *causa mortis* are not favored, and such gifts must be clearly proved. Such a gift can be upheld only when the intention of the donor is definite and certain, and such gift is executed. Directions by an owner in respect to a disposition of his property, to take effect at his death, are of no effect unless made through the medium of a last will and testament. *Gano* v. *Fisk*, 43 Ohio St. 462.

The act constituting the transaction must be consummated, and not remain incomplete or in mere intention; and this is the rule whether the gift is by delivery, only, or by the creation of a trust. *Martin* v. *Funk*, 75 N. Y. 134.

A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift *inter vivos;* revocable only upon the recovery of the donor in gifts *causa mortis*. *Walsh's Appeal*, 122 Pa. 177.

Barton never took the property as trustee, because the legal title was never transferred to him. 1 Perry on Trusts, sec.

100; *Badgley* v. *Votrain*, 68 Ill. 25; *Roth* v. *Michalis*, 125 id. 325; *Martin* v. *Funk*, 75 N. Y. 134.

The rules of law require that a gift, either direct or in trust, shall be established by clear proof, and that no uncertainty shall exist as to the subject or object of the gift. 1 Perry on Trusts, (2d ed.) sec. 83; *Sheedy* v. *Roach*, 124 Mass. 472; *Taylor* v. *Keep*, 2 Bradw. 368; *Gano* v. *Fisk*, 43 Ohio St. 462.

Mr. HORATIO C. BURCHARD, for the appellee:

The letter and delivery to Barton, and his acceptance and reply, constitute a trust and valid *donatio causa mortis* in favor of Mrs. Reed. Perry on Trusts, sec. 81; *Cooper* v. *McClun*, 16 Ill. 485; *Gilman* v. *McArdle*, 99 N. Y. 450.

Where property, as a gift *mortis causa*, is delivered to a third person, to be delivered to the donee after the donor's death, the gift is valid though the second delivery is after the donor's death. *Wells* v. *Tucker*, 3 Binn. 370; *Borneman* v. *Sidlinger*, 15 Me. 429; *Coutant* v. *Schuyler*, 1 Paige, 316; *Dole* v. *Lincoln*, 31 Me. 87; *Richardson* v. *Adams*, 10 Yerg. 273; *Sessions* v. *Mosley*, 4 Cush. 87; *Heneschal* v. *Maurer*, 69 Wis. 576; *Rhodes* v. *Childs*, 64 Pa. St. 25; *Barclay's Estate*, 11 Phil. 123.

A delivery to a trustee for the use of the party is as effectual as a delivery to the party himself. *Stone* v. *Hackett*, 12 Gray, 227; *Miller* v. *Billingsby*, 41 Ind. 189.

A *donatio causa mortis* may be upon conditions other than those implied from the nature of the gift. *Currie* v. *Steel*, 2 Sandf. 542.

A deed delivered to a third person, to be by him kept until the death of the grantor, and then delivered to the grantee, is a valid deed. *Wheelwright* v. *Wheelwright*, 2 Mass. 446; *Latham* v. *Udell*, 38 Mich. 238; *Stephens* v. *Huss*, 54 Pa. St. 20; *Hathaway* v. *Payne*, 34 N. Y. 92; *Stewart* v. *Stewart*, 5 Conn. 316; *Ladd* v. *Ladd*, 14 Vt. 185; *Foster* v. *Mansfield*, 3 Metc. 414.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The notes and certificates of deposit sought to be recovered in this case being payable to Mrs. Davis, the testatrix, and not having been indorsed, are *prima facie* assets of the estate. Therefore, unless it is shown that she, in her lifetime, made a valid disposition of the property, the executor of her will is entitled to the same. The defense interposed admits, in effect, that the testatrix died seized of this property unless she parted with it by donation or gift, either to her sister, Mrs. Reed, directly, or to E. P. Barton, as trustee, for her benefit. The burden, therefore, rests upon Mrs. Reed to show that the title to the property passed to her from the testatrix, or to Barton, in trust for her.

The claim that a gift was made of this property to Mrs. Reed is based principally upon the letter of the testatrix to Barton, written a week before Mrs. Davis' death, and his reply thereto. There was some evidence of the declarations of the testatrix, made a few days before, and on the night she wrote the letter which is referred to, in which Mrs. Davis said that her sister should have pay for all her trouble in taking care of her,—that she should have all the testatrix' personal effects, and the like. The husband of Mrs. Reed testified to these declarations. Waiving the question of his competency to testify in favor of his wife, we think the evidence inadmissible for the purpose of showing what the testatrix in fact did in respect of her property, or as tending to interpret the meaning of the letter to Barton, afterwards written. If the intention of the testatrix was material, these declarations would afford evidence bearing upon that question, and tend strongly to show an unexecuted intention on the part of the testatrix to make some further provision for her sister, but whether by will, or by gift during her life, does not appear. If such provision was intended to be made by a change in her will, as intimated in her letter to Judge Barton, it remained unexe-

cuted. Mrs. Reed was already the principal devisee in the will of her sister. A valuable farm of two hundred acres had been devised to her for life, and also chattel property of the value of $3000, besides which she was to receive one-third of the residuum of the estate.

In respect of whether there was a gift *inter vivos*, it is to be remembered that Mrs. Davis was living with her sister, Mrs. Reed, and if she had desired to make an absolute gift to the latter of these notes and certificates of deposit, she could have done so, and having declared the gift, let her sister send them to Judge Barton for collection, instead of doing so herself. The simplest and most natural course would have been to make the gift directly to the donee.

Reliance is placed upon the letter to Judge Barton, and his reply, as showing a gift *causa mortis*. If these letters, in connection with the facts surrounding the transaction, fail to establish a valid transfer of property, Mrs. Reed must fail. The letter of Mrs. Davis, after alluding to the uncertainty of life, and the possibility, if not probability, of its speedy termination, states the fact that the letter contained the notes, the three certificates of deposit, (giving the amount,) and the $50 in cash, and requests that Judge Barton, with the money derived from the interest, when paid on the notes and the certificates, procure a new certificate of deposit for $2000 in lieu of the certificates sent him. She further directs, that if she be then dead,—that is, when the interest is paid on the note,—to draw the certificate—*i. e.*, the certificate for $2000—in her sister's name, and send the interest on the notes and certificate to her sister until the notes and certificate are paid, and when they are paid, to place the money in the bank and send her sister the interest. Portions of the letter, standing alone, might indicate a direction to Barton to send Mrs. Reed the notes and certificates of deposit; but later in the letter the direction is to put the money, when they are paid, in the bank, and send her,—*i. e.*, the sister,—the interest. The manifest

meaning is, that when the notes and certificates are paid, to put the money thereby derived in the bank, and send Mrs. Reed the interest. It is evident from this, that the notes and certificates were not to be delivered to Mrs. Reed, as in that event this latter direction could not be carried into effect.

The language referred to, and most strongly insisted upon, is that occurring after the direction to take enough of the interest money arising from the notes, which, added to the $50 in cash sent in the letter, and the amounts of the certificates of deposit, will be sufficient to purchase a new certificate for $2000, and if the testatrix was then dead, to draw said certificate in Mrs. Reed's name, "and send the interest, and the notes, and the interest on them, to her as long as they continue." As long as what continued? Evidently, as long as they, the notes and certificates, continue to draw interest,— that is, until they are paid. Then immediately follows the language, "and when they are paid, put them in the bank, and send the interest to her." This clearly indicates that the interest on the notes and certificates of deposit was to be paid Mrs. Reed until they were paid off, and when they were so paid, the money they represented was to be put in the bank, and the interest sent to Mrs. Reed. As long as the testatrix lived, her sister was given nothing. The latter clause of the letter reads as follows: "The remainder of the interest, due in May, send me, if alive; if not, to her," Mrs. Reed. By this is clearly meant that Barton should first procure the new and increased certificate of deposit, in her name, if alive; if not, in the name of her sister; and send to her (Mrs. Davis) the interest, if alive; if not, it was to be sent to Mrs. Reed. It was only upon the condition of Mrs. Davis' death that the new certificate was to be taken in Mrs. Reed's name,—if, in fact, it was ever so intended to be taken,—or that any interest was to be sent to her. The reply of Barton shows that he received the property as agent of Mrs. Davis, for whom he, it appears, had acted for some years then past. He says: "Re-

ceived same to collect interest, when due, on the notes in May next, and on the $1700 certificate, and to return to you, if alive, the two notes, a certificate of Second National Bank for $2000, and the balance of the money. If you are dead when the interest matures, in May, then I am to follow your letter of instructions in favor of Mrs. Permelia Estes Reed."

The first question presented is, whether Mrs. Davis made a valid gift of the property then owned and held by her. The law requires the gift, whether direct or in trust, shall be established by clear proof, and that no uncertainty shall exist either as to the subject or object of the gift. (1 Perry on Trusts, (2d ed.) sec. 83; *Sheedy* v. *Roach,* 124 Mass. 472; *Taylor* v. *Keep,* 2 Bradw. 368; *Gano* v. *Fisk,* 43 Ohio St. 462.) *Donatio mortis causa* must be a completed and executed gift, the same as in the case of a gift *inter vivos.* If the gift does not take effect as an executed and completed transfer to the donee, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only when made by a valid will. (*Basket* v. *Harrell,* 107 U. S. 602; *Comer* v. *Comer,* 120 Ill. 420; *Cline* v. *Jones,* 111 id. 563; *Walter* v. *Ford,* 74 Mo. 195; *McCord* v. *McCord,* 77 id. 166; *Gano* v. *Fisk, supra.*) That is, the act or acts constituting the transaction must be consummated, and not remain incomplete or rest in mere intention,—and this is the rule whether the gift is by delivery, only, or by the creation of a trust. *Marlin* v. *Funk,* 75 N. Y. 134; *McCord* v. *McCord, supra.*

To constitute a valid gift *inter vivos,* possession and title must pass to and vest in the donee irrevocably. In this respect, alone, a gift *causa mortis* differs from that of a gift *inter vivos,* as in the case of the former it is revocable on the recovery of the donor. (*McCord* v. *McCord, supra; Walsh's Appeal,* 122 Pa. St. 177.) Therefore a proposed gift, to take effect only upon the death of the donor, being in its nature testamentary, will not be sustained as a gift *causa mortis.* (*Comer* v. *Comer, supra; Cline* v. *Jones, supra; Basket* v. *Har-*

*rell, supra; Walter* v. *Ford, supra; McCord* v. *McCord, supra.*) The donor must part with all control of the property in order to make a valid gift. If he reserves any right or title the gift will be incomplete. *Barnes* v. *People,* 25 Ill. App. 136; *Hatch* v. *Atkinson,* 52 Me. 346.

The letter of Mrs. Davis does not profess, by any proper or apt words, to convey title, legal or equitable, either to Barton or Mrs. Reed. No words are therein found from which any intention to give up the control of the property by Mrs. Davis prior to her death can be inferred. The custodian and agent, Barton, was to act for her as long as she lived, and his acts during her life, within the scope of his authority, were as her agent, and his possession was her possession. If Mrs. Reed was to have any interest in the property it was to commence *in futuro,*—that is, after her sister's death. Moreover, it may well be asked, what interest did Mrs. Reed take in this property? The interest was to be paid to her from the notes and certificates as long as they "continued," and when paid, as we have seen, the money was to be deposited in the bank and the interest paid to her. Was it intended thereby to create a trust, by which she was to receive the interest, only, during her life, or was the intention to give her the property absolutely upon the death of Mrs. Davis?

As we have before seen, to constitute a gift no uncertainty should exist either as to the object or subject of it. It must be conceded that the interest of Mrs. Reed is not clearly defined. It is left uncertain by the language employed. But however this may be, we are of opinion that upon the first ground discussed the evidence fails to show a valid gift of this property *mortis causa.* From what has preceded, it is apparent that we are also of the opinion that the facts of the case fail to show that Mrs. Davis constituted Barton trustee of the property for the benefit of Mrs. Reed. It is clear that the legal title to the notes and certificates of deposit did not vest in him. In 1 Perry on Trusts, (sec. 100,) it is said: "If the

donor or settler proposes to make a stranger the trustee of his property, and the property is a legal estate, capable of legal transfer and delivery, the trust is not perfectly created unless the legal title is actually transferred to or vested in the trustee. It is not enough that the settler executed a paper purporting to pass it, if, in fact, the paper does not have that effect. The intention of the settler to divest himself of the legal title must be consummated and executed, or the court will not enforce the trust."

There can be no pretense that Mrs. Davis transferred the legal title of the notes and certificates of deposit to Barton. That could be done only by endorsement. And, moreover, there was no intention apparent on her part to thus invest him with the legal title for any purpose whatever. While it is true that they were placed in his hands in expectation of her death, yet she retained control of them during her lifetime, and died seized of the legal title to these instruments of writing. The rule is well settled that a court of equity will not aid or perfect a defective gift. If legally made by a transfer of the title to the trustee it will be upheld. In other words, a court of equity can not render the transaction perfect, so as to constitute a valid gift, which the donor has left imperfect, and can not convert an imperfect or incomplete gift into a declaration of trust on account of such imperfection. *Young* v. *Young,* 80 N. Y. 422.

In *Clark* v. *Lott,* 11 Ill. 115, this court said: "The principle is well settled that a court of equity will not lend its aid to establish a trust at the instance of mere volunteers. If the transaction on which a voluntary trust is attempted to be established is still executory or incomplete, the court will decline all interference in the matter." In *Badgley* v. *Votrain,* 68 Ill. 25, we said: "In the reliable elementary works the result of the decisions is stated to be, that if the trust is *perfectly created,* so that the donor or the settler has nothing more to do, and the person seeking to enforce it has need of no further

conveyances from the settler, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration, and the possession of the property was not changed. But if, on the other hand, the transaction is incomplete, and its final completion is asked in equity, the court will not interpose to perfect the settler's liability, without first inquiring into the origin of the claim and the nature of the consideration given." See, also, Hill on Trustees, 83 ; *Martin* v. *Funk,* 75 N. Y. 134 ; . *Roth* v. *Michalis,* 125 Ill. 325.

The judgment of the Appellate Court is reversed, and the cause remanded to that court, with instructions to affirm the decree of the circuit court.      *Judgment reversed.*