62 423
165s 210

## Emma J. Chamberlain and Maria W. Sheppard v. Jennie B. Williams, Adm'x, etc.

1. INSURANCE—*Assignment of Policy—Presumption of Acceptance.*— Where the holder of a policy of insurance upon his life made an assignment of the same, and communicated the fact to the assignee, it will be presumed that the assignee acquiesced therein, as the act was beneficial to him.

2. DELIVERY—*An Intention Insufficient—Gifts.*—A mere intention to deliver a chose in action, unaccompanied by delivery, does not execute a gift, and a seal to a voluntary assignment does not import a consideration, until delivery or something is done equivalent thereto.

3. SAME—*When the Mere Manual Act is Excused.*—When the holder of a policy of life insurance assigned the same by an instrument under seal, and notified the assignee thereof, and of his intention to make it as a gift in consideration of past services, but retained possession of the policy and assignment, paying the premium thereon until his death, it was held that from the circumstances the law will excuse the mere manual delivery of the assignment and policy, and hold what was equivalent thereto was done.

4. EQUITY—*Discards Meaningless Forms.*—Equity discards unmeaning and useless forms, and looks to the substance of the act done and

the intention with which it was done, and in the absence of fraud will carry out such intention.

**Petition in Probate,** to have certain policies of insurance delivered to the administrator. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded with directions. Opinion filed February 10, 1896.

JOHN M. GARTSIDE and FRANK P. LEFFINGWELL, attorneys for appellants, contended that notice to the insurance company of the assignment of a policy of life insurance is not necessary to the validity of the assignment. 2 May on Insurance, (3d. Ed.), Sec. 396; Hogue v. Minn. P. & P. Co., N. W. Rep. 812.

No one but the insurer can raise the question that the insured had in his lifetime assigned his policy to one who had not an insurable interest. Hogue v. Minn. P. & P. Co., 60 N. W. Rep. 812; Martin v. Stubbings, 126 Ill. 387; Benefit Association v. Blue, 120 Ill. 124; Crawford's Appeal, 11 P. F. Smith (Pa.) 53; N. Y. Life Ins. Co. v. Flack, 3 Md. 341; Ætna Life Ins. Co. v. France, 94 U. S. 501.

Any one may insure his own life and assign the policy to whom he will if the transaction is not a mere cover for a wager. Martin v. Stubbings, 126 Ill. 387; Conn. M. Life Ins. Co. v. Schaefer, 94 U. S. 457; Langdon v. Un. M. L. Co., 14 Fed. Rep. 472.

The declarations and admissions the insured made after he had executed the assignments of the policies, and while he still held the policies and the assignments, indicating the interest of his assignees in the proceeds of the policies, are admissible evidence, and binding on his administratrix. Cowen & Hill's notes, Phillips' Ev., 644, 657, 658-9, 663, 668; Greenl. Ev., Secs. 153, 190; Taylor's Ev., Sec. 787; Sandifer v. Hoard, 59 Ill. 246; Williams v. Judy, 3 Gilm. 282; Reed v. Douthit, 62 Ill. 348–351; Mueller v. Rebhan, 94 Ill. 142; Miller v. Meers, 155 Ill. 284; Merrick v. Hulbert, 15 Ill. App. 606; Kane v. Tarbet, 23 Ill. App. 313; Grant v. Grant, 34 Beav. 623; Watkins v. Young, 31 Gratt. 84; Autrey v. Autrey, 37 Ala. 618; Clement v. Hood, 57 Ala. 459, 462;

Bransford v. Crawford, 51 Ga. 20; West v. Bolton, 23 Ga. 531, 534; Phillips v. Chappell, 16 Ga. 16; Gibblehouse v. Strong, 3 Rawle, 437, 438–9; Crawford's App., 11 P. F. Smith (Pa.) 53; White v. Chouteau, 10 Barb. 202; Smith v. Maine, 25 Barb. 33; 2 Smith's L. C. (8th Ed.) 1011; Raybold v. Raybold, 8 Harris (Pa.) 308; Scott v. Bank, 140 Mass. 157.

There was a completed gift. There was a delivery to the donees. Acceptance by the donees completed the delivery. Their acquiescence was acceptance. Otis v. Beckwith, 49 Ill. 121; Walker v. Walker, 42 Ill. 311; Masterson v. Cheek, 23 Ill. 73; Knapstein v. Tennette, 57 Ill. App. 570; S. C. (Sup. Ct.) 40 N. E. R. 947; McElroy v. Hiner, 133 Ill. 159; Bryan v. Walsh, 2 Gilm. 569; 2 Kent, *438 (13 Ed.) note b; 2 Roll. Abr. 62: 14 Vin. Abr. 123;·2 Man. & G., No. 691 n. c.

Manual delivery was not necessary. The intention governs. Otis v. Beckwith, 49 Ill. 121; Walker v. Walker, 42 Ill. 311; Bryan v. Walsh, 2 Gilm. 569; Reed v. Douthit, 62 Ill. 349; Masterson v. Cheek, 23 Ill. 73; Weber v. Christen, 121 Ill. 96; Knapstein v. Tennette (Ill.), 40 N. E. Rep. 947; Knapstein v. Tennette, 57 Ill. App. 570; McElroy v. Hiner, 133 Ill. 159; Miller v. Meers, 155 Ill. 284; Chowne v. Baylis, 31 Beav. 351; Bunn. v. Winthrop, 1 John. Ch. 329; Ellis v. Secor, 31 Mich. 185, 189, 190; Raybold v. Raybold, 8 Harris (Pa.) 308; Crawford's Appeal, 11 P. F. Smith (Pa.) 53; Hine & Nichols Assign. Life Pol. 33.

Delivery to donees was not necessary. The gift was made under seal. Otis v. Beckwith, 49 Ill. 121; Perkins, Grant 57; 2 Kent (13th Ed.), *438; Com. Dig., tit. Liens (D. 2); 2 Man. & G. *691.

The instruments of assignment of the policies having been executed as present and complete assignments (not being mere contracts to assign), were equivalent to declarations of trust. Richardson v. Richardson, L. R., 3 Eq. Cas. 686; Grant v. Grant, 34 Beav. 623, 625; Morgan v. Mallison, L. R., 10 Eq. Cas. 475; Otis v. Beckwith, 49 Ill. 121; Kekewich v. Manning, 1 DeG., M. & G. 176; Thornton on Gifts, p. 415; Raybold v. Raybold, 8 Harris (Pa.) 308;

Martin v. Funk, 75 N. Y. 134; Scott v. Berkshire Co. Sav. Bk., 140 Mass. 157; Minor v. Rogers, 40 Conn. 512; Bond v. Bunting, 78 Pa. St. 210; Jones v. Locke, L. R., 1 Ch. 25.

The acts and declarations of Frank H. Williams amounted to a voluntary settlement upon his sisters of the proceeds of the life insurance policies. Black's Law Dict., p. 1228; 22 Am. & E. Ency. L., 490; Sear v. Ashley, 3 Swanst. 411 n.; Bolton v. Bolton, 3 Swanst. 414 n.; 1 Story's Eq. Jur., Secs. 433, 705; Bryan v. Wash, 2 Gilm. 557; Walker v. Walker, 42 Ill. 311; Masterson v. Cheek, 23 Ill. 72; Reed v. Douthit, 62 Ill. 352; Souverbye v. Arden, 1 Johns. Ch. 240; Bunn v. Winthrop, 1 Johns. Ch. 329; Fortescué v. Barnett, 3 Mylne & K. 36; Miller v. Meers, 155 Ill. 284.

PECK, MILLER & STARR, attorneys for appellee, contended that a delivery is essential to a gift. There was no delivery here, and no completed gift.

This is the universal rule of law. Telford v. Patton, 144 Ill. 611; Barnum v. Reed, 136 Ill. 388; Bovee v. Hinde, 135 Ill. 137; Richardson v. Richardson, 148 Ill. 563; Byars v. Spencer, 101 Ill. 429; Hoig v. Adrian College, 83 Ill. 267; Baskett v. Hassell, 107 U. S. 602; 108 U. S. 267; Trough's Appeal, 75 Pa. St. 115; Palmer v. Merrill, 6 Cush. 282; Ridgway v. McCartney, 57 Ill. App. 543; Foster v. Gile, 50 Wis. 603; Dexter Savings Bank v. Copeland, 77 Me. 263; Flanders v. Blandy, 45 Ohio St. 108; May, Ins. (3d Ed.), Sec. 390; 2 Kent's Comm. 438, 439; Young v. Young, 80 N. Y. 422; Trimmer v. Danby, 25 L. J. Ch. 424; 8 Am. & Eng. Enc. Law, 1316.

The meditated gift was incomplete and left imperfect and no trust will be created. Clarke v. Lott, 11 Ill. 105, 115; Badgley v. Votrain, 68 Ill. 25; Wadhams v. Gay, 73 Ill. 415; Barnum v. Reed, 136 Ill. 388 to 398; Milroy v. Lord, 4 De G., F. & J. 264; Richardson v. Delbridge, L. R., 18 Eq. 11; Hayes v. Alliance Ins. Co., L. R., 8 Irish 139; Warriner v. Rogers, L. R., 16 Eq. 340; Antrobus v. Smith, 22 Ves. Jr. 39; Jones v. Lock, L. R., 1 Ch. Ap. 25; Moore v. Moore, 43 L. J. Ch. App., N. S. 623 (Hall, V. C.); In re Breton's Estate, L. R. 17, Ch. 416; Young v. Young, 80 N. Y. 422.

Mr. Justice Shepard delivered the opinion of the Court.

The appellants were, respectively, sisters of Frank H. Williams, who died intestate November 23, 1891, leaving him surviving a widow, the appellee, and one child.

During Williams' lifetime he took out two policies of life insurance upon his own life, in the Connecticut Mutual Life Insurance Company, in favor of his legal representatives, dated respectively, March 1, 1884, and March 13, 1884, one for $10,000, and the other for $5,000, and he paid all premiums that thereafter became due thereunder.

The appellee was appointed administratrix of Williams' estate by the Probate Court of Cook County. During the course of administration the appellants presented their several petitions to the Probate Court for the delivery to them, respectively, of said policies, then in the custody of the clerk of said court, and upon a hearing of said petitions and the answers of appellee thereto, it was so ordered.

From such order of the Probate Court appellee prosecuted an appeal to the Circuit Court of Cook County, where, upon a hearing of said petitions there consolidated and heard together, the prayers thereof were denied, and said policies were found and adjudged to be assets of said estate, and that appellants had no right, title or claim thereto.

From such decree of the Circuit Court this appeal is prosecuted.

It was shown that after the death of Williams the policies in question were found in a tin box belonging to him, and kept in the vault of the wholesale store of Marshall Field & Co., where Williams had been employed for many years before his death.

Attached to each policy was an assignment thereof, of which the following is a copy of that attached to the $10,000 policy:

"In consideration of $2 to me paid I do hereby assign, transfer and set over unto Emma J. Chamberlain (my sister), of Croton Falls, New York, her executors, administrators and assigns, policy number 170,501 in the Connecticut

Mutual Life Insurance Company, dated the first day of March, A. D. 1884, in the sum of $10,000, together with all profits due or to become due thereon.

Witness my hand and seal at Chicago, Illinois, this 5th day of March, A. D. 1884.

FRANK H. WILLIAMS.    [L. S.]

In presence of Henry M. Curtis.

(See special notice indorsed hereon.)"

The assignment attached to the $5,000 policy was identical with the one just copied, except that the assignee therein named was "Maria W. Sheppard, my sister, of Falls Valley, Connecticut," and that the policy was differently described, according to the fact, and in the date thereof, as March 19, A. D. 1894.

The "special notice" to which attention was directed by the note at the foot of the form of assignment was as follows:

" The company offers this form of assignment of policies solely for the convenience and accommodation of its members. It has no control of assignments, can not become responsible for them, and must reserve all questions for impartial action when contracts become due and payable. All claims under assignments are subject to satisfactory proof of the assignee's interest in the life insured, and to all defenses against the obligations of the policies. It is desirable that the transfer be annexed or attached to the policy. Duplicates or certified copies of assignments may be sent to the company, to be noted and filed for the purpose of reference and information.

JOHN M. TAYLOR,<br>Vice President."

Paragraph sixth of the conditions of each of such policies provides:

" That no assignment of this policy shall be valid unless made in writing indorsed hereon; and any claim against this company, arising under this policy made by any assignee, shall be subject to satisfactory proof of interest in the life insured, in due form, and to any breach of the conditions of

this contract by any of the parties hereto, whether such breach exist prior or subsequent to such assignment; and such proof of interest shall be a condition precedent to any right of action on this contract by or on behalf of such assignee; and this company shall in no case be responsible for the validity of any assignment."

No question was made by the company of its liability on the policies, or as to said assignments, or notice thereof, in any respect, but on the contrary, it paid the moneys due thereon to the American Trust and Savings Bank, under an order of the Probate Court, entered upon the stipulation of parties, providing that said bank might collect and hold the proceeds in lieu of the policies, for the benefit of the party eventually found to be entitled thereto.

It was proved by Henry M. Curtis, who witnessed said assignments, that he was a soliciting agent of the said insurance company, and had been such since December, 1878; that at the time or just after the delivery of the first, or $10,000 policy, Williams applied to him to know how he could make the policy payable to a particular person; that Curtis told Williams it could be done by an assignment, and handed Williams the blank form of assignment that was used, and showed him how to fill it out; that Williams then stated to Curtis that he felt under obligations to his sisters; that they had done a great deal for him; that he felt indebted to them for what they had done for him in years past, and he wanted to provide for them, as they had not any amount of means, and he wanted them to have his life insurance in case of his death; that Curtis then told Williams all he would have to do in such case was to fill out the assignment, making the policy run to them, and attach it to his policy; that Williams then filled out the blanks and signed the assignment, and he, Curtis, witnessed it; that when the second policy, the one for $5,000, came, substantially the same thing was repeated, Williams stating the same reasons for so doing; that the policy in each case was right there on the desk before them when the conversation was had and the assignment made and witnessed; that Curtis

told Williams where to attach the assignments, although he could not testify that he saw them attached by Williams; that afterward, on several occasions, after Williams had trouble in his family relations, Williams told Curtis he was glad that he had his insurance assigned to his sisters so that they could get it in case of his death, and expressed a very bitter feeling toward his wife's father.

When the policies were found in Williams' box, after his death, the assignment of each was attached to the proper policy, and it can not be reasonably questioned, under the evidence concerning the keeping and opening of the box, that he attached the same.

Mrs. Woolf, who had known Williams for eighteen years, and in whose family Williams lived from May, 1891, to the time of his death, testified to having had two conversations with Williams about his life insurance. The first one occurred about the last of May, 1891, and he then spoke of his family troubles and of his insurance, and told her that his insurance was made out to his sisters, Mrs. Chamberlain and Mrs. Sheppard. The next conversation took place soon after his return, in August, 1891, from a visit to the east, when he told her that he talked the matter over with his sisters, and that everything had been arranged about his insurance; that it would go to his sisters; that they would see that his little girl was taken care of and educated; that he told his sisters where he wished to be buried; that they would have his insurance, and would see that the expenses were paid.

Another witness, Jacob I. Bear, testified that Williams had boarded at his house over four years, and frequently told him that he, Williams, had fixed his life insurance so that the Barnums (his wife's family) could not handle the money, and that if they got the money they would use it all up and nothing would be left for his child; that he said he had made the policies payable and transferable to his sisters; that he had all confidence that his sister, Mrs. Chamberlain, would care for his child; that he did not want his wife or the Barnums to handle the money.

Cornelia A. Bear, the wife of the last named witness, testified that Williams told her that he had transferred his policies to his said sisters; that he gave most of the insurance to Mrs. Chamberlain, in confidence for his child, that she was to use it as she saw fit for the benefit of the child, as she should need it; that he had made known to his sisters the assignments he had made for them to have his insurance money; that they understood and knew his wishes in the matter, and he had no fear but that they would do so; that he did not want his wife to handle any of the money on account of her relations, the Barnums, for if they handled it there would be nothing left for his child, and that he had got it so fixed that the Barnums could not get it.

When the insurance policies in question were taken out by Williams and assigned by him to his sisters, he was married, but had no child. His little daughter was born in the same year, 1884, on December 8th.

The inference from the testimony of the witnesses, with whom Williams lived during five or six years last preceding his death, is that his family troubles, alluded to as existing as early as in 1884, when the policies were issued and assigned, culminated in a separation between himself and wife.

It does not, therefore, seem to be an unfair presumption that, so far as at least his wife, the appellee, is concerned, the same reasons why he should wish and intend that some one other than his wife should have the benefit of the policies existed ever after they were assigned by him, as did when he made the assignments. And there can be no reasonable question, from all the evidence, that he intended at the time he made the assignments and continuously there after up to the time of his death, that his sisters, the appellants, should have the benefit of the policies. There can, we say, be no reasonable question made but that Williams wished his sisters to have the insurance money that would arise from these policies at his death, and that he wished his wife not to have it, and that such wish existed when he made the assignments, and continued to exist during all the rest of his life.

Nor can there be any more question but that he intended

to, and believed he had, lawfully vested his sisters with the right to the money, and that such intention and belief was never changed after he made the assignments in the manner directed and witnessed by Curtis.

The evidence also shows, without contradiction, that he communicated to his sisters his wishes in the matter, and that he had assigned his policies to them, and it will be presumed that they acquiesced in such acts by him, the effect of which was beneficial to them.

There was, also, as has been stated, evidence in the form of statements by him, that his sisters had done a great deal for him in earlier years, and that he felt indebted to them therefor, and that his object in assigning the policies to them was to provide for them because of such acts by them to him.

No useful purpose could have been served by a bare delivery of the policies, assigned, but on the other hand, it is apparent that convenience was best served by Williams retaining them so long as it was necessary for him to pay the annually recurring premiums thereon.

It may be conceded that a mere intention to deliver a chose in action, unaccompanied by delivery, does not execute a gift; and that a seal to a voluntary assignment does not import a consideration until after the chose has been delivered, or something done that is equivalent to delivery. But from all the circumstances, the intention to give, the perfected assignments under seal, the notice to the donees that the assignments had been made and their presumed acceptance thereof, the consideration of past services and favors, raising a moral if not a legal obligation to do the very deed itself, the continued affirmation by Williams in various ways of his executed assignments during a period of more than seven years, we think the law will excuse the mere manual delivery of the assignments and the policies, and hold what was equivalent thereto was done.

This is not the case of the aid of the court being invoked to aid in compelling an assignment. The assignments had been made, the intention to give had been manifested, the beneficiaries had been notified by the assignor of the assignments, and had presumably accepted the same, and Will-

iams had been advised by the agent of the insurance company that he had done all that was necessary to make the transfer a complete one, and he believed he had so done. Under such circumstances may we not well ask, as did our Supreme Court in Otis v. Beckwith, 49 Ill. 121 (on page 132), "was not the gift of this policy as complete as the nature of the thing and subject admitted?" What was further said in the same case, on pages 135–6, is very pertinent to this case.

"It by no means follows, judging by these cases, that there must be a delivery of the instrument on which a right is based, or a valuable consideration; if the intention of the party can be plainly perceived, that, the court, in the absence of fraud, will carry into full effect. Can there be any doubt of the intention of the intestate in this case? And was not the object he sought to accomplish by the assignment of the policy, one pure and holy, commending itself to the right, reason and sense of justice of every one? Equity, discarding unmeaning and useless forms, will look to the substance of the act done, and the intention with which it was done, and carry out the intention. A delivery of the assignment to complainant, at the time it was made, was not necessary for any then existing purpose, as the policy was inert and unproductive during the life of the assured, and when, on his death, it became important the assignee should have the policy, in order to recover the proceeds of the company, the evident and unquestioned intention of the donor is frustrated by his administrator, and that which he intended as a provision for his orphan child is sought to be appropriated as assets of the estate. There is neither justice nor equity in this, the intention being so manifest in the other direction."

We do not regard the mere fact that notice was not given by Williams to the insurance company, of the assignments of the policies in a manner which enabled the company to expressly assent thereto, or to note the fact upon its books, as important.

The conditions and rules of the company relating to assignments of its policies have been quoted, and it there ap-

pears that no notice thereof was required; that all that was required with reference to an assignment of a policy was that it should be in writing indorsed on the policy, and that any claim under the policy by an assignment thereof should be subject to proof of interest by the assignee in the life of the assured.

Moreover, as has been said, the company has paid the amount of the policies without objection, and the proceeds now remain subject to the final determination of the rights of the parties to this suit, claiming the same. The rights of such parties should not be made in any way to depend upon a lack of notice to the company which the company itself does not interpose.

In view of what was held in Otis v. Beckwith, *supra*, we do not care to spend time and space in a review of all the authorities that have been cited in argument, but prefer to rest our decision upon the authority of that case, and if there is any distinction in principle between that case and this one, to leave it to the Supreme Court to mark it.

As said in the concluding words of the opinion in that case (p. 141), " We place the most stress upon the first point discussed, and that is, the intention of the donor; * * * at no time did he manifest any desire to retract, and though he occupied *locus penitentiæ*, he did not repent of his act, but left the world with the conception that those so dear to him had been provided for. We see nothing in the case to justify us in frustrating this intention, but every consideration impelling to give it full force and effect." See also Comer v. Comer, 120 Ill. 420.

The decree of the Circuit Court will therefore be reversed, and the cause remanded, with directions to that court to decree that the appellants, respectively, are entitled to the proceeds of said policies now held by the American Trust and Savings Bank, as trustee, and to make such further order with reference to the payment of said proceeds to the appellants as is necessary to accomplish that result. Reversed and remanded with directions.

Mr. Justice Waterman dissents.