## CELIA W. WALLACE

### v.

## HENRY S. MONROE, TRUSTEE, AND CYTHERA M. RAP-PLEYE.

*Attachment— Equitable Estate, within Act—*Res Adjudicata—*Husband and Wife—Agency—Administration—Claim for Interest—Duty of Trustee.*

1. Under Sec. 3 of the Attachment Act, an equitable estate for life in lands is subject to attachment.

2. The misfortune of physical or mental debility can not be recognized as a sufficient ground for allowing a party to redeem from an execution sale after the expiration of the statutory period.

3. The relation of principal and agent does not spring from that of husband and wife, nor can it be presumed from that relation alone. Before a wife can be charged with responsibility for the acts of her husband in relation to her separate property, she must be shown by some affirmative and satisfactory evidence to have given him authority to act in her behalf.

4. It is not the duty of an administrator to pay a claim for interest against an estate until it is presented and allowed by the Probate Court.

5. In the case presented, it is *held:* That at the time of the service of the writ of attachment the cross-complainant had an equitable estate for life in the premises in question; that a former decree precludes her from alleging, as against the purchaser at the execution sale or his assignee, that her interest in said land was not subject to attachment; that the cross-complainant has no ground of complaint against the administrators in refusing to pay her claim for interest; and that the trustee does not appear to have finally refused to mortgage the land in question to raise money with which to redeem.

[Opinion filed June 28, 1887.]

IN ERROR to the Circuit Court of Cook County; the Hon. THOMAS A. MORAN, Judge, presiding.

Statement by BAILEY, J.   This was a bill in chancery brought by Henry S. Monroe, trustee, against Celia W. Wallace and Cythera M. Rappleye, to determine the respective equitable rights and interests of the defendants in and to a certain tract of land described in the bill.   The defendants appeared and answered, setting up their respective claims to said land, and said Celia W. Wallace filed her cross-bill praying to redeem said land from an execution sale under which said Cythera M. Rappleye claimed an equitable interest therein and the right to receive the rents and profits thereof, and that, upon payment of the redemption money, said Cythera M. Rappleye be decreed to quit-claim said land to her.   Answers were filed to said cross-bill, and issues were duly formed thereon, as well as upon the answer to the original bill, by replications, and the cause coming on to be heard on pleadings and proofs, a decree was entered finding that said Cythera M. Rappleye had an equitable estate in said land, and was entitled to receive the rents and profits thereof during the life of said Celia W. Wallace, and directing said trustee to pay said rents to her, and dismissing the cross-bill of said Celia W. Wallace at her costs, for want of equity.   From this decree said Celia W. Wallace has appealed to this court.

The facts, as shown by the pleadings and proofs, are substantially as follows :   John S. Wallace, being about to marry said Celia W. Wallace (then Celia Whipple), conveyed the land in question to Henry S. Monroe, in trust, for the benefit of said Celia Whipple.   The declaration of trust in said deed is as follows :   " But in trust, to and for the following uses and trusts, to-wit: for the sole and separate use of the said Celia Whipple during her natural life, and free from the debts, contracts and engagements of any future husband, and from and after her death for the benefit of any child or children of said Celia Whipple by said party of the first part, and the descendants of any such child or children being deceased, having descendants, such descendants are to take their parent's share in equal parts between them; but during the minority of any child or children, the trustee or trustees hereunder for the time being, and from time to time, shall collect and receive

the rents, profits and income, if any, of said premises, or other property which may be substituted therefor on said trusts, and apply the same for the benefit of such child or children or descendants thereof, as to such trustee or trustees shall seem most expedient, or settle the same upon any such children upon their attaining their majority generally, or upon any trust which may be declared the better to preserve the estate for the benefit of such child or children of said Celia by the said John S. Wallace, or of the descendants thereof respectively as aforesaid; but from and after the death of said Celia, if the said Wallace shall survive her and such child or children and descendants respectively, the said Wallace, his heirs and assigns forever, shall have the sole use and benefit of the aforesaid trust property and the avails or income thereof, and of the property substituted on like trusts by virtue hereof, and it shall and may be lawful for the said Celia, by her separate writing, to be acknowledged as in the case of an unmarried person, at any time hereafter, to enable the said Monroe, or his successor or successors in the trust aforesaid, to sell, convey, mortgage, lease or otherwise incumber or dispose of any part or the whole of the above described premises, or other property substituted for the same on the same trust, or to make any contract in reference thereto which the said trustee or trustees could do if sole owners without being bound by any trust, and it shall not be the duty of the purchaser to see to the application of the purchase money, and in case of selling, mortgaging or leasing of said premises or any part thereof, the said trustee or trustees shall pay the purchase money, rent or other moneys into the hands of the said Celia, or invest the same in other property upon like trusts and with like powers, and in all respects as aforesaid as she shall in writing elect or direct, and in case the said Monroe shall die or resign, or, in consequence of removing to a distant place or otherwise, become unable and unwilling to discharge the duties of a trustee as aforesaid, then the said Celia, by her separate writing to be acknowledged as if she were unmarried, may nominate a successor in trust who shall have the like powers and be subject to the same limitations as the

said party of the second part.   In case the said property shall be used and occupied by the said Celia or her family, the said trustee shall in no way be liable for the rents, issues and profits of the same, and full power and authority is hereby given said party of the second part to permit said Celia, her husband, or any agent she may appoint, to collect said rents and profits for her use, and said trustee shall not be bound to see to the payments of taxes unless he shall see fit to do so."

Said conveyance to said trustee was executed February 23, 1865, and on the 1st day of the following March, John S. Wallace and Celia Whipple were married.   In the year 1867, there was born, as the fruit of said marriage, a son, John S. Wallace, Jr., who died in 1882, leaving his mother surviving him.   On the 9th day of April, 1872, Mrs. Wallace obtained a divorce from her husband on the ground of cruelty, and the 24th day of December, 1878, said Wallace died leaving him surviving his said son, John S. Wallace, Jr., Frank R. Wallace, a daughter by a former marriage, and said Cythera M. Rappleye, an illegitimate daughter.

On the 28th day of March, 1874, the land in question was leased by said trustee to Henry W. Martin for a term of ten years, at an annual rental of $500, the lessee to pay all taxes and assessments during the term.   On the 30th day of March, 1876, Robert Hervey and others brought a suit in assumpsit against Celia W. Wallace, and sued out an attachment in aid of said suit, by virtue of which the Sheriff attached all the right, title and interest of said Celia W. Wallace in said land. Such proceedings were had in said suit that, on the 5th day of January, 1878, the plaintiffs therein recovered a judgment against said Celia W. Wallace for $450 and costs, with an order for a special execution for the sale of the property attached. On the 28th day of October, 1878, said property was sold under such special execution for $497.47, Elbridge Hanecy, one of the plaintiffs in the execution, becoming the purchaser and receiving the certificate of purchase.   During the period of redemption, and according to Hanecy's testimony on the 30th day of October, 1879, Hanecy sold and assigned said certificate to said Cythera M. Rappleye, and on the 13th day

of March, 1880, the Sheriff executed a deed of said premises to her. After the execution of said deed, both Mrs. Wallace and Mrs. Rappleye claimed the rents, and as the consequence, the tenant refused to pay the rent to either. At the request of both, the trustees thereupon took measures to collect the rent due, and at the date of filing his bill he had succeeded in collecting a portion and was about to collect the residue.

At the time Celia Wallace obtained her decree of divorce from her husband, the court awarded her as alimony, and for the support and maintenance of her son, the custody of whom was committed to her, $6,500 in cash and $20,000 in ten years, with 8 per cent. interest, payable semi-annually, the last-mentioned sum being evidenced by two promissory notes executed to her by said Wallace for the sum of $10,000 each, said notes being secured by a deed of trust on certain real estate in Chicago. One of said notes was paid by said Wallace in his lifetime and the other remained in the hands of Mrs. Wallace.

Immediately after the death of Wallace, his daughter, Frank R. Wallace, then an unmarried woman about twenty-two years of age, and one Albert P. Smith, were appointed administrators of his estate. Frank R. Wallace was then living in the family of Mrs. Rappleye and her husband, both of whom were on unfriendly terms with Mrs. Wallace, and was largely under their influence. As Mrs. Wallace claims, and as the evidence tends to show, the administration of said estate was carried on to a great extent according to Mr. Rappleye's advice and under his control. She also claims, and gave evidence tending to prove that at the time of the sale of said land under execution, and during the entire period of redemption, she was in embarrassed and straightened circumstances, and was without the means to redeem said land from said sale; that she was wholly dependent upon the interest on the $10,000 note held by her for the money to make said redemption; that after the death of Wallace no interest was paid her on said note until after the time of redemption had expired, when the entire interest due her was paid; that she applied to the administrators for said interest to enable her to redeem

Wallace v. Monroe.

said land, but that the administrators, acting under the advice of Rappleye, declined to make such payment, the purpose of Rappleye being, as she alleges, to deprive her of the ability to redeem the land and to prevent her from making such redemption, and that it was in consequence of such conduct on the part of Rappleye that she failed to redeem the land. It does not appear, however, that she ever presented either said note or the interest coupons to the Probate Court for allowance as claims against said estate, and evidence was given on behalf of Mrs. Rappleye tending to show that the administrators asked her to present her claim for interest to said court for allowance, assuring her that if allowed it would be paid, but that she declined to do so.

She also claims and gave evidence tending to show that at the date of the sale of said lands, and until the time of redemption had expired, she was in very feeble health, and was, owing to her feeble condition of body, incapable, physically and mentally, of attending to any ordinary or complicated matters of business, and that such facts were known to Mr. and Mrs. Rappleye, and she alleges that her said sickness was taken advantage of by Mrs. Rappleye in acquiring said certificate of sale.

The evidence further shows that on the 11th day of November, 1878, Mrs. Wallace filed her bill in chancery in the Circuit Court of Cook County against Hervey, Anthony, Galt and Hanecy, the plaintiffs in said judgment, and the Sheriff of Cook County, alleging that said plaintiffs, as her attorneys, rendered for her certain professional services, and that she deposited with them the promissory note of one Martin, for $450, as security for the payment to them of a compensation for their services rendered and to be rendered, and that they promised that the amount of the note should be collected and applied in payment for said services, and any balance returned to her; that before the maturity of the note a dispute arose between her and said attorneys in relation to the value of their services, and that in March, 1876, they brought suit against her in said Circuit Court, and that in such suit the value of said services was fully litigated and

determined and found to be $450, and that judgment was thereupon rendered against her in their favor for that amount; that during the pendency of said suit $473.76 was paid said attorneys on said note, and that upon the recovery of said judgment it was their duty to apply the amount so collected to the satisfaction of said judgment, and account to her for the residue; that they refused to do so, and claimed that their judgment was for the sum due them over and above the amount of said note; that in October, 1878, they sued out an execution on said judgment, and on the 28th day of October, 1878, pretended to sell the property in question to said Hanecy for the amount of the judgment and costs, and that the Sheriff threatens to convey to Hanecy all her right, title and interest in said land; that she is the owner of an equitable life estate in said premises, and by the pretended sale and filing of the certificate thereof, her title has become clouded; that the sale is wholly invalid as against her, and that the judgment, in equity, was fully paid. The bill prayed for a decree against all of said parties, enjoining them from claiming any right, title or interest in said premises by virtue of said pretended sale or certificate of sale, and enjoining the Sheriff and his successors in office from executing any deed of said premises in pursuance of said sale to Hanecy or his assigns, and that the judgment might be declared satisfied and the plaintiffs therein be decreed to satisfy the same of record, and said Hanecy be compelled to execute a release of all interest acquired by him by virtue of said certificate, and that the said sale might be declared void, and an account be taken and a decree rendered in her favor against Hervey, Anthony, Galt and Hanecy for any balance remaining in their hands, and also a general prayer for relief. The defendants answered alleging the validity of said judgment and Sheriff's sale, and a replication to said answer was filed, and on final hearing on pleadings and proofs, a decree was entered dismissing the bill at the costs of Mrs. Wallace, the complainant therein, for want of equity. In the present suit Mrs. Rappleye has, in her answer to both the original and cross-bill, set up said proceedings and decree as a bar to so much of the relief prayed for by Mrs.

Wallace v. Monroe.

Wallace as is founded upon the non-liability of her interest in the land in question to sale on said execution. The remaining facts are sufficiently stated in the opinion of the court.

Messrs. LYMAN & JACKSON and MELVILLE W. FULLER, for plaintiff in error.

The Sheriff's deed must be set aside on account of the fraud perpetrated upon plaintiff in error by Nicholas B. Rappleye, the husband of Cythera M. Rappleye.

The administrators of the estate of John S. Wallace could neither defeat the marriage settlement made by Mr. Wallace in his lifetime, by purchasing an adverse claim to it, nor could they defeat it by withholding from Mrs. Wallace money due her from the estate and thus prevent her from redeeming from the Sheriff's sale.

In a marriage settlement the trustee is bound to carry the appointment into execution without himself setting up, or allowing any one else to set up, anything to defeat it. Hovenden on Fraud, Vol. 1 (Ed. of 1832), 484; Morris v. Clarkson, 1 Jac. & Walk. 107.

We insist that the marriage settlement having been made by Mr. Wallace in his lifetime, and he being incapacitated from defeating it, the administrators of his estate were under like disability. If he had purchased a tax claim for the purpose of defeating the marriage settlement, there can be no doubt but that a court of equity would have allowed her to redeem.

The trustees of John S. Wallace, being incapacitated from purchasing the Sheriff's certificate for the purpose of setting it up to defeat the marriage settlement made by Wallace in his lifetime, or from withholding money due to Mrs. Wallace, growing out of the marital relation existing between Mr. and Mrs. Wallace, for the purpose of preventing her from protecting her marriage settlement, the same disability extended to both Mrs. and Mr. Rappleye.

All the acts of Rappleye connected with the estate must be subjected to the closest scrutiny, and neither he nor his wife can be permitted to obtain any advantage growing out of his

connection with the estate.   Davis v. Hamlin, 108 Ill. 39, 48; Keech v. Sandford, 1 Ld. Cases in Eq. 53 ; G., C. & S. R. R. Co. v. Kelly, 77 Ill. 426, 434.

Appellant had no interest in the property in question subject to levy of attachment or execution, and was therefore entitled to the relief prayed by her cross-bill.

Under the provisions of the contract Mrs. Wallace had no such legal or equitable right or interest in or to the land itself as was subject to the levy of an attachment or execution, and as the trust was created in good faith by, and the fund proceeded from a person other than Celia W. Wallace, it could not be reached by creditor's bill.

The trust created by this deed was clearly, as this court has held, an active trust and not a passive one.   Mrs. Wallace had not the fee nor any other estate, right, title, or interest in or to the land itself, which she could convey or transfer, and therefore none such as could be taken, conveyed or transferred *in invitum.*

Trusts of real and personal property and of the rents, issues, profits and produce of the same, may be created, which shall secure the use of the same during life, to the beneficiary, but so that it shall not be subject to alteration either by voluntary act on his part, or *in invitum* by his creditors.   Spindle v. Shreve, 11 U. S. 542; Steip v. Whitehead, 111 Ill. 247.

Mr. JAMES E. MUNROE, for Cythera M. Rappleye, defendant in error.

" Our statute of wills requires all claims to be presented to the Probate Court, and to be there adjusted before they can be legally paid out of the assets of the estate."   Reitzell v. Miller, 25 Ill. 67; Walker v. Deihl, 79 Ill. 473; Lynch v. Hickey, 13 Ill. App. 139.

An heir is under no liability to pay the debt of the ancestor from whom he takes real estate, except when the personal estate of the ancestor is exhausted, or until it has been determined to be insufficient to pay the liabilities of the deceased. McLean v. McBean, 74 Ill. 134 ; Diversey v. Johnson, 93 Ill. 547, 557; Ryan v. Jones, 15 Ill. 1.

The administrators had no power to make the proposed

exchange of securities.   Their duties were to pay the debts due from the estate upon probate thereof, to collect debts due to the estate, and pay the balance in their hands remaining to the distributees under the order of the Probate Court.   Reitzell v. Miller, 25 Ill. 67; Scott v. Atchison, 38 Texas, 390; Parkam v. Stith, 56 Miss. 465.

It is well settled that statutory rights of redemption will not be extended by courts of equity to cases not provided for by the statute.   This rule is enforced by the following authorities and many more that might be cited.   McCormack v. Russell, 25 Pa. St. 185; Smith v. Macon, 20 Ark. 17.

Failure to redeem within the statutory period through mistake of law or fact, or through negligence, will not be a ground for equitable interference afterward.   Campau v. Godfrey, 18 Mich. 27; Playter v. Cochran, 37 Iowa, 258.

The trustee had a discretion, which equity could not control, to grant or deny the request to mortgage the property. Wallace v. Wallace, 82 Ill. 530.

BAILEY, J.   All the right, title and interest of Celia W. Wallace in and to the land in controversy having been seized on attachment and sold on execution, the question is raised whether she had any interest or estate in said land liable to attachment or execution.   The statute in relation to the service of writs of attachment is as follows:

"Such officer shall without delay execute such writ of attachment upon the lands, tenements, goods, chattels, rights, credits, moneys and effects of the debtor, or upon any lands or tenements in and to which such debtor has or may claim any equitable interest or title, of sufficient value to satisfy the claim sworn to, with costs of suit, as commanded in such writ."   R. S., Chap. 11, Sec. 8.

The statute in relation to judgments and executions is equally broad.   After declaring that judgments and executions issued thereon shall be liens upon the real estate of the judgment debtor, it defines the term "real estate" as follows:

"The term 'real estate,' when used in this act, shall include lands, tenements, hereditaments, and all legal and equitable

rights and interests therein and thereto, including estates for the life of the debtor or of another person, and estates for years, and leasehold estates, when the unexpired term exceeds five years." R. S., Chap. 77, Sec. 3.

Prior to March 31, 1869, an attachment could not be levied upon an equitable interest in lands. West v. Schnebley, 54 Ill. 523; Farrar v. Payne, 73 Ill. 82. The section of the Attachment Act above cited, which was passed March 31, 1869, and re-enacted December 23, 1871, renders equitable interests in land subject to attachment to the same extent as legal titles. Laclede Bank v. Keeler, 103 Ill. 425. It can not be doubted, we think, that at the time of the service of the writ of attachment, Mrs. Wallace had an equitable estate for life in the land in question. Said land was conveyed to the trustee to be held by him in trust " for the sole and separate use of the said Celia Whipple (now Mrs. Wallace) during her natural life." Language could scarcely have been chosen manifesting more clearly an intention to vest Mrs. Wallace with the entire equitable estate for life. While the legal estate was conveyed to the trustee, the entire beneficial interest was given to her. The subsequent portions of the deed contain various provisions directing and regulating the manner in which the trust was to be executed, but they in no way change the character of the interest vested in Mrs. Wallace as an equitable estate in the land. There can be no doubt then that her interest in said land was an equitable interest or title within the meaning of the Attachment Act, and that it was subject to attachment.

We are also of the opinion that Mrs. Wallace is precluded by the decree in her chancery suit against Hervey and others from alleging, as against the purchaser at the execution sale, or his assignee, that her interest in said land was not subject to attachment. In her bill in that case she alleges that she had an equitable life estate in said premises, but alleged that the sale was invalid and prayed to have it so declared. The decree dismissing her bill for want of equity was a final adjudication upon the question of the validity of said sale, and is conclusive of that question whenever it arises between her and the defend-

ants to said bill or those standing in the relation of privity with them.

But that portion of the decree to which our attention is chiefly directed by counsel, is that which denies the prayer of Mrs. Wallace's cross-bill to be permitted to redeem. In support of her prayer to be allowed now to redeem from the execution sale, she urges the following equitable considerations: 1, That at the time of the sale, and during the period allowed by the statute for redemption, she was in such health physically and mentally, as to be incapable of attending to business; 2, That during the same period she was in straitened pecuniary circumstances, and without the means to make the redemption: and 3, That she was deprived of money to which she was entitled, and which would have been sufficient to enable her to redeem from the sale, by the fraudulent or oppressive acts of the administrators of the estate of John S. Wallace, deceased, of Mr. Rappleye, and of the trustee, until the period of redemption had expired.

With regard to the first two of the foregoing grounds for relief, it is sufficient to say, that however much the misfortune of physical or mental debility or of want of means may appeal to our sympathies, they never have been, so far as we are advised, and can not be, recognized as sufficient grounds for allowing a party to redeem after the statutory period has expired. The statute makes no exception in favor of those thus unfortunately situated, and we are not aware that the courts have attempted to do so.

As to the other ground for relief, even if it should be held to be good in law, we do not think that it is made out by the evidence. No fraudulent practice or oppressive conduct is shown as against Mrs. Rappleye, the holder of the title under the execution sale. There is no proof that she has done anything of which Mrs. Wallace has a legal right to complain. It is claimed, however, that the course pursued by the administrators and the trustee in relation to Mrs. Wallace was under the direction and advice of Mr. Rappleye, her husband, and that in all those matters Mr. Rappleye was acting in the interest and as the agent of his wife. The evidence tends to show that, in

the purchase of the certificate of sale, Mr. Rappleye carried on the negotiation and made the purchase as his wife's agent, but there is no evidence that his agency extended beyond that single transaction. The relation of principal and agent does not spring from that of husband and wife, nor can it be presumed from that relation alone. Before Mrs. Rappleye can be charged with responsibility for the acts of her husband, she must be shown by some affirmative and satisfactory evidence to have given him authority to act in her behalf, and in the absence of such evidence she, in all her property rights, is as much a stranger to him as though no relation whatever existed between them. Whatever, then, may have been done by Mr. Rappleye, or the administrators, or the trustee, can have no effect upon the legal or equitable rights of Mrs. Rappleye.

But we are of the opinion that Mrs. Wallace has no ground of complaint in relation to the action of the administrators in refusing to pay her money. At the time of the death of Mr. Wallace, Mrs. Wallace held his promissory note for $10,000, secured by a deed of trust on real estate, and bearing interest at the rate of 8 per cent. per annum, payable semi-annually. Of this interest an installment of $400 became due in April, 1879, and a like installment in October of the same year. So far as we can see from the evidence, these two sums were all the money due and payable to her from the estate of Mr. Wallace up to the time the redemption from said sale expired. The evidence tends to show that she applied to the administrators for payment of those sums, and that they, acting under Mr. Rappleye's advice, refused to pay them. It further appears, however, that she neglected to exhibit her claim for said interest to the Probate Court for allowance, and the evidence tends to show that she was requested by the administrators to make such presentation of her claim, they telling her that they would pay it when allowed. The position thus taken by the administrators was clearly correct and legal. They had no right to pay out the moneys of the estate except upon the order of the Probate Court in satisfaction of claims duly presented and proved, and allowed by that

court, and it certainly was not their duty to pay a claim not proved or allowed. Under the circumstances, then, their refusal to pay Mrs. Wallace's claim for interest partook of no element of either fraud or oppression.

It is further claimed by Mrs. Wallace that, as a means of raising money, she proposed to the administrators to exchange her $10,000 note and deed of trust for certain other property belonging to the estate, but that the administrators, acting under the advice of Rappleye, refused to make the exchange. Apart from the fact that Mrs. Rappleye is in no way connected with the matter of such proposition, we are unable to see how Mrs. Wallace can complain of the action of the administrators in this respect. Whether they had the power to make the exchange or not, they clearly had the right to decline to make it, and their doing so was an act of neither fraud nor oppression, so far as concerns Mrs. Wallace.

It is said that the trustee was at fault in not complying with Mrs. Wallace's request to mortgage the land in question for the purpose of raising money to redeem said land from the execution sale. The evidence shows that Mrs. Wallace applied to the trustee to mortgage said land for $2,500 to raise money, not only for the purpose of such redemption, but to defray the expenses of the maintenance of her infant child. The trustee seems to have discussed the matter with her, and to have expressed the opinion that the execution of a mortgage for that amount would be unwise, and he appears to have suggested to her the expediency of trying to borrow the money on the security of her $10,000 note and deed of trust. She does not seem to have pressed her request for the execution of a mortgage, and the matter does not appear to have been finally decided between them, as she admits in her testimony that the trustee did not refuse her request to execute it. We see in these facts no ground of relief to Mrs. Wallace, especially in view of the decision of the Supreme Court giving construction to the identical deed by which said trust was created, that while by the terms of said deed Mrs. Wallace could authorize the trustee to sell the land, she could not compel him to do so, and that no sale could be made without

the concurrence of both the *cestui que trust* and the trustee. Wallace v. Wallace, 82 Ill. 530. It is manifest that by the terms of said deed, the rule applicable to a sale applies as well to a mortgage.

We are of the opinion that the decree of the court below was the only one justified by the law and the evidence, and it will be affirmed.

*Decree affirmed.*

MORAN, J., took no part in the decision of this case.