**Phillipina Simpson, Appellee, v. Augusta Heberlein, Appellant.**

**Gen. No. 33,751.**

 Heard in the second division of this court for the first district at the October term, 1929. Opinion filed January 27, 1931.

HERMAN P. SCHER and COHON & GOLDSTEIN, for appellant.

OTA P. LIGHTFOOT, for appellee; THOMAS F. GILMORE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In a first class action in contract, commenced in the municipal court on November 7, 1928, there was a trial without a jury in March, 1929, resulting in a finding and judgment against defendant in the sum of $3,129.40, and this appeal followed.

In plaintiff's statement of claim she alleged in substance that in December, 1916, one George B. Klor loaned to defendant the sum of $1,800, for which defendant executed and delivered to him her promissory note for $1,800, dated Chicago, December 4, 1916, payable to his order on or before two years after date, with 6 per cent interest per annum from date (copy of note set out in full in the statement); that subsequently said Klor, believing himself to be, and being, "in prospect and peril of death from a sickness and disease," assigned and delivered the note *unindorsed* to plaintiff "for her own use," with the understanding, however, that should he recover from said sickness and disease the note should be his property; that thereafter on May 4, 1918, Klor died from said sickness and disease; that plaintiff, ever since she received the note from him has had it in her possession; that no part of the money due thereon has ever been paid; and that although plaintiff has often requested payment of defendant she has refused to pay the note

or any part thereof, to plaintiff's damage in the sum of $5,000.

In the affidavit of claim, accompanying said statement it is stated that there is now due (November 7, 1928) to plaintiff on the note the total sum of $3,087, after allowing to defendant all just credits, etc.

In defendant's affidavit of merits, filed November 27, 1928, she alleged in substance that plaintiff does not allege that Klor ever indorsed the note; that plaintiff is not the legal owner; that she did not pay any consideration for the note; that it never was assigned and delivered by Klor in his lifetime to plaintiff "for her own use," as alleged; that there is a signature "George B. Klor" on the back of the note but the same is *not* his genuine signature; that the note was in plaintiff's possession for a considerable time after Klor's death and during that time it did not bear said signature or name on its back; that "the indebtedness evidenced by the note was by mutual consent and agreement with the payee, Klor, now deceased, *canceled and extinguished*"; and that defendant is not indebted to plaintiff on the note in any sum.

On the trial defendant was called and examined under section 33 of the Municipal Court Act, Cahill's St. ch. 37, ¶ 421, and plaintiff testified in her own behalf and was cross-examined at great length. Defendant introduced a certified copy of Klor's last will, admitted to probate in the probate court of Cook county on June 13, 1918, and called as her witness John Leo Fay, an attorney-at-law and the executor of said will. Defendant also testified in her own behalf.

When defendant was on the stand under section 33 the original note was shown her and she stated that she signed it as maker and delivered it to Klor in his lifetime, and that she had never paid anything on the note to him or anyone. Plaintiff then offered the note in evidence, and upon objection by defendant's at-

torney the court said "I will withhold passing on the note for the present." Thereupon a copy of the note was produced and it was stipulated by the parties that the same is a true and perfect copy of the original, and that said copy "may be inserted in the bill of exceptions in lieu of the original." It is contained in the present transcript, and is substantially as set out in plaintiff's statement of claim, as above stated, except that on its back is the name "George B. Klor," written in ink in block letters.

On direct examination plaintiff testified in substance that Klor, during his lifetime and for about 18 years, owned and conducted a delicatessen store on Kinzie Street, Chicago; that she during most of the period conducted a rooming house nearby, was a frequent customer at Klor's store and became well acquainted with him; that early in January, 1918, he informed her that he was seriously ill and had to go to a hospital and requested her to manage his store and business until he returned; that she did so until several months after his death at the hospital on May 4, 1918; that one Henry Heberlein also worked at the store as Klor's employee,—she waiting on customers and Heberlein "taking out the orders"; that she did not receive any compensation for her services although when she was employed Klor stated that he would pay her therefor; that he was suffering from cancer and plaintiff frequently visited him at the hospital in the evenings and on Sunday afternoons and there talked with him regarding business at the store and other matters; that during her visits there in the latter part of January he several times told her that he had a note (the one sued upon) and some other papers which he desired to give to her and urged her to procure a "vault" or safety box in her name and put them in it; that she finally "rented a vault" and so informed Klor; that early in February, on a Sunday afternoon,

he gave her a package of papers in which was the note and other papers and told her to put them in *her* vault; that "he told me to keep them, and if he came out he wanted them back, and if he did not come out he wanted me to keep them"; that she put the papers in her vault, where they remained until after his death; that for a time she "did not do anything in reference to the note, because it was not due"; that after it became due she presented it to defendant and requested payment, but defendant refused to pay anything; that after Klor's will had been probated and while his estate was being administered, she stated to Andrew J. Klor, brother of the deceased and chief beneficiary under the will, that she had a note signed by defendant, and that the deceased in his lifetime had made a gift of it to her.

On cross-examination plaintiff testified in substance that she was not related to Klor; that when he gave her the package of papers no one else was present; that there were three safes in Klor's store which she never opened; that the note is now in the same condition as when she first saw it, except a stamp on its face and the name "George B. Klor" on the back; that when she first saw it after opening the package containing the note "there was nothing written on the back of the note"; that it has been in her possession ever since, except when she turned it over to a "collector," who returned it, and when she turned it over to her attorney when the present action was brought; that the name "George B. Klor" now on the back is not his signature and "is a fake"; that her first conversation with Andrew J. Klor regarding the note was had about seven or eight months after the deceased's death; that she then told him "about getting the note," and he "did not say anything," except that he would see his attorney, Fay; that she first became acquainted with Fay after Klor's death, and in April, 1928, spoke

to him about the note; that Fay caused the safes in the store to be broken open, in which there were found large sums of money and other assets; that she continued to manage the store until about September, 1918; that she used the proceeds of the sales to pay bills "as I was told to do by Mr. Fay and Mr. Andrew Klor"; that she never made or filed any claim against Klor's estate for her services; that when Klor in the hospital delivered to her the package of papers, after having spoken about the note, "he told me if he died he wanted me to keep it and if he did not die, if he got over that, he would want it back"; that on several occasions at the hospital, before Klor's death, both plaintiff and defendant and Klor visited together, but nothing was said about any note; and that at the time that Klor gave her the package of papers in the hospital she did not then examine the contents of the package and did not then know what was in it.

In Klor's last will, executed by him four days before his death and introduced in evidence by defendant, he bequeathed to his brother, Andrew J. Klor, "all uninvested cash belonging to me" and bequeathed certain legacies to various named persons, including *defendant*, to whom he bequeathed "a legacy sufficient to pay the $5,000 mortgage from her and held by me and my said brother." All the remainder of his estate he devised and bequeathed to his said brother, his heirs and assigns forever, and he appointed his friend, John Leo Fay, as executor of the will and to act without bond. No mention is made in the will of the said note signed by defendant.

Fay, called as defendant's witness, testified in substance that he acted as executor of Klor's will, and with the help of his assistant, Fogel, finally settled Klor's estate and he was discharged as executor; that he has "no recollection" of having had any conversation with plaintiff about the note, while the estate was

in process of settlement, although he several times saw her in his office; that the note "was *not* included in the inventory of the estate"; that at the time of Klor's death the mortgages mentioned in the will were in his (Fay's) possession; that he has since learned that the note was drafted in his office and by Mr. Fogel; that he was present when the safes in Klor's store were broken into; that they contained much cash and many checks; that the contents were removed to his office; that Klor's estate was settled and his final report as executor filed "nine or ten years ago"; that he first learned of the existence of the note sued upon in the present action "two or three years ago"; that he "did nothing" regarding it and made no effort to have it put in the possession of the estate or have it administered upon; that Andrew J. Klor never asked him (Fay) to make any effort to have the note put into the possession of the estate; and that when final distribution of the contents of Klor's store was made "the merchandise was turned over to Mrs. Simpson" (plaintiff).

Defendant, called as a witness in her own behalf, testified in substance that in March, 1918, shortly before Klor died, she had a conversation with him at the hospital; that no one else was present; that she asked him if he wanted her "to bring the *interest* due on the note to him"; that he said "no"; that he stated he had plenty of money with him for his needs, that if he wanted any *interest* he would ask her for it, and that she should "wait until he came to her house to get it"; and that that was "all he said." This was the only testimony offered by defendant, in any way bearing upon her defense, as stated in her affidavit of merits, that her indebtedness to him, as evidenced by said note, had by mutual agreement "been canceled and extinguished." And in our opinion it does not even tend to establish that defense.

In *Telford v. Patton,* 144 Ill. 611, 619, it is said: "There are three requisites necessary to constitute a *donatio causa mortis*: 1. The gift must be with a view to the donor's death; 2, it must have been made to take effect only in the event of the donor's death by his existing disorder; 3, there must be an actual delivery of the subject of the donation." (See, also, *Roberts v. Draper,* 18 Ill. App. 167, 171; *First Nat. Bank of Chicago v. O'Byrne,* 177 Ill. App. 473, 477; *Chicago Savings Bank & Trust Co. v. Cohn,* 197 Ill. App. 326, 328; *Ridden v. Thrall,* 125 N. Y. 572, 579.) It is here conceded by counsel for defendant that a promissory note of a third person, payable to the order of and owned by a would-be giver, can legally be made the subject of a gift *causa mortis,* and that the giver's indorsement of the note is not necessary; and such is the law of this State. (*First Nat. Bank of Chicago v. O'Byrne,* 177 Ill. App. 473, 479; *Brown v. Hamsmith,* 247 Ill. App. 358, 371; *Rothwell v. Taylor,* 303 Ill. 226, 229, 230.)

The main contention of defendant's counsel is in substance that the finding and judgment are against the evidence, because it does not sufficiently appear that the note was delivered to plaintiff by Klor with the intent to pass the title to her in case Klor died from his said sickness and disease. In *Rothwell v. Taylor,* 303 Ill. 226, 230, it is said (italics ours): "It is now well settled by all the authorities that negotiable instruments are subjects of a valid gift without indorsement or written assignment by the payee, *if delivered* to the donee by the payee *with intent to transfer the title.* The burden of proof of the gift is on the donee to prove all facts essential to a valid gift. The essential facts are the delivery of property by the donor to the donee with intent to pass the title, and the great weight of authority is that the proof to sustain the gift must be clear and convincing. Mere posses-

sion by one claiming property as a gift, after death of the owner, is universally, we believe, held insufficient to prove a valid gift.'' (See, also, *Bolton v. Bolton,* 306 Ill. 473, 486; *Collins v. Ogden,* 323 Ill. 594, 604; *Peters v. Woods,* 251 Ill. App. 374, 375.) We are of the opinion, however that in the present case something more than mere possession of the note in plaintiff was shown by her uncontradicted testimony, which was competent as against *defendant.* We think that her testimony was sufficiently clear and convincing that Klor intended to pass the title to the note to her in the event he died from his then existing sickness and disease, from which according to the evidence he did die. And it appears from the testimony of Fay that no claim ever was made by him, as executor of Klor's will, or by Andrew J. Klor, chief beneficiary under the will (after they had knowledge of plaintiff's claim of ownership) that said note was an asset of Klor's estate. These facts tend somewhat to corroborate plaintiff's testimony that the note was a gift *causa mortis* to her by Klor.

And we do not think there is any substantial merit in counsel's further contention that the judgment should be reversed because it does not affirmatively appear that the court formally ruled that the note be received in evidence. It is apparent from the judgment that the court considered it to be in evidence, and it furthermore appears both parties tried and argued the case upon that theory.

Equally without merit in our opinion is counsel's further contention that the judgment is excessive because the amount is larger than the amount stated in the *affidavit* accompanying plaintiff's statement of claim. It is not larger than the *ad damnum* in said statement of claim (*Keator Lumber Co. v. Thompson,* 144 U. S. 434, 438) and the amount of the judgment in excess of the face of the note includes the accrued in-

terest, at the rate as stated, from the date of the note to the date of the judgment.

Our conclusion is that the judgment of the municipal court should be affirmed and it is so ordered.

*Affirmed.*

SCANLAN, P. J., and KERNER, J., concur.