In the Matter of the Estate of John Warden, Deceased, E. C. Churchill, Executor, Appellant, v. Earl Pelling, Intervening Petitioner, and Long View State Bank, Appellees.

Gen. No. 9,137.

354

Opinion filed January 24, 1939.
Rehearing denied April 4, 1939.

SCHAEFER & DOLAN, of Champaign, for appellant.

DOBBINS, DOBBINS & THOMAS, of Champaign, for certain appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

E. C. Churchill as executor of the estate of John Warden, deceased, filed a petition in the county court of Champaign county, Illinois, asking for the issuance of a citation against the Long View State Bank to show cause why it should not turn over two notes of $750, each in its custody to the executor of the John Warden estate. When the matter came on for a hearing in the county court, M. H. Keefe, president of the Long View State Bank appeared in person, and Earl Pelling, the appellee and intervening petitioner herein entered his appearance and claimed the notes in question by attorneys. The cause was heard before the court without a jury and the county court held that the notes were the property of Earl Pelling and dismissed the petition

for citation. The executor appealed to the circuit court of Champaign county where the matter was again tried by the court without a jury. The circuit court also found that Earl Pelling was the owner of the notes in question, dismissed the petition for citation and entered judgment thereon. From this judgment the said executor prosecutes an appeal to this court.

The facts are not in dispute and revolve mainly around the testimony of M. H. Keefe, the president of the Long View State Bank. The evidence discloses that John Warden during his life time was a patron of the Long View State Bank, and a friend of M. H. Keefe, its president. On October 13, 1931, Warden wanted to loan the sum of $1,500 to James and Edwin Carlton, but for some reason one of the Carltons did not wish to deal directly with Warden. Therefore, the bank loaned the sum of $750 to each of the Carlton boys and took their notes, dated October 16, 1931, and within a few days thereafter indorsed the notes to John Warden. Warden then took the notes and placed them in his private lock box in the vault of the bank where they remained until the first part of July, 1933. On or about that time Warden had a conversation with Keefe during the course of which he told Keefe he wanted those notes to go to one of his nephews Earl Pelling and asked how he could do it. He said he wanted to draw the interest during his lifetime and at his death they were to be the property of Earl Pelling. Keefe replied as follows, ''I told him that I thought if he indorsed them to Earl Pelling that would be sufficient, and that is what he did, and left the notes in the charge of the bank for the purpose of holding them and collecting the interest from time to time, and the notes always remained in the bank.'' The notes were indorsed on the back as follows: ''Pay to the order of Earl Pelling, John Warden.'' The notes were removed from the private deposit box of Warden at the time of this indorsement, and Warden then handed the notes to

Keefe to place them in a different box in the vault of the bank where similar notes were kept for safe keeping. Warden continued to maintain his private deposit box in the bank where he kept his own papers up to the time of his death.

After this transaction occurred interest was collected on both notes on various occasions and either paid to Mr. Warden in cash or credited to his account in the bank. Both notes were due and payable on October 16, 1933. The last interest payment made on the James Carlton note was January 6, 1936, and on the Edwin Carlton note on October 24, 1935. Warden never had any conversation with Keefe or any one in the bank with regard to payment of the notes. The notes were still in the safety deposit box in the custody of the bank on July 31, 1936, the date of John Warden's death. Keefe testified that he never saw Earl Pelling prior to Mr. Warden's death and never had any communication from him or anyone else for him except what John Warden had said to him. The evidence does not show that Earl Pelling knew anything about the notes prior to the death of John Warden. The sole and controlling question in the case is, "Was there a sufficient delivery of the notes in question to pass title to the Intervening Petitioner, Earl Pelling?"

The appellant concedes that John Warden intended that the notes in controversy should go to Earl Pelling but urges and insists that there was no sufficient delivery to pass the title. We are inclined to believe that the record in this case sustains the contention of the appellant. It is our judgment that in order to show a completed gift it was necessary to show that Keefe was either an agent of or trustee for Pelling. We can find nothing in the evidence which warrants that assumption. In the case of *Streeper v. Myers*, 132 Ohio 322, 7 N. E. (2d) 554, the court stated as follows: "Where a delivery is thus made to a third person

the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donors' agent or as trustee for the donee.'' In the case of *Barnum v. Reed,* 136 Ill. 388, the court said:

''The rule is well settled that a court of equity will not aid or perfect a defective gift. If legally made by a transfer of the title to the Trustee, it will be upheld. In other words, a court of equity cannot render the transaction perfect, so as to constitute a valid gift, which the donor has left imperfect, and cannot convert an imperfect or incomplete gift into a declaration of trust on account of such imperfection.''

In this case John Warden told Keefe he wanted his nephew Earl Pelling to have the notes and asked Keefe how he could do it. Keefe told Warden that he thought if he indorsed them to Pelling that would be sufficient. Nothing was said about delivery and no instructions were given Keefe or any other party to deliver said notes upon the death of John Warden. The rules of law require that the act constituting the transaction must be consummated and must be established by clear and convincing proof. There should be no uncertainty as to either the intent or the delivery. In the absence of any delivery to Pelling or anyone for him it would be just as reasonable to argue that Keefe was merely the agent for Warden and that the latter could recall the notes and change his mind about the delivery at any time as it is to conclude that the indorsement of the notes gave Keefe or any other party the right to deliver the notes to Pelling upon the death of Warden. We cannot see how the testimony in this case makes Keefe either an agent or trustee for Pelling.

In the case of *Martin v. Martin,* relied upon by appellee, 170 Ill. 18, there was an absolute delivery to the donee. This was evidenced by the placing of se-

curities in the donee's own safety deposit box, by letters from the donor, by declarations of the donor and other documentary and oral proof. There was no reservation of an interest nor any dominion or control reserved by the donor. If we construe the testimony of Keefe that Warden wanted to draw the interest during his lifetime and at his death the notes were to become the property of Earl Pelling, it was an attempt to make a testamentary disposition without complying with the statutory requirements providing for the proper execution of the last will and testament.

In the case of *Barnum v. Reed, supra,* the court further said: "If the gift does not take effect as an executed and completed transfer to the donee, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only when made by a valid will. That is, the act or acts constituting the transaction must be consummated, and not remain incomplete or rest in mere intention—and this is the rule whether the gift is by delivery, only, or by the creation of a trust."

While it is apparent from the testimony that Warden stated that he wanted the notes to be the property of Earl Pelling at his death, the mere fact that he left them at the bank after making the indorsement without any kind of instructions whatsoever is in our judgment no evidence of delivery.

Since the intervening petitioner failed to prove the essentials necessary to a complete delivery and for the reasons stated in this opinion the judgment of the circuit court is reversed, and judgment is entered in this court in favor of the appellant.

*Reversed.*