Pamela Lynn Dudley, a Minor, by Brendon Regina Dudley, Guardian, Plaintiff-Appellee, v. Uptown National Bank of Moline, Illinois, et al.; Uptown National Bank of Moline, Illinois, and Andrew Voss, Appellants.

Gen. No. 11,355.

Second District, Second Division.

May 16, 1960.

Rehearing denied June 6, 1960.

Joseph R. Rosborough, of Moline, for appellant.

Winstein & Rimmerman, of Rock Island, for appellee.

CROW, J.

The plaintiff-appellee, Brendon Regina Dudley, as Guardian of Pamela Lynn Dudley, a minor, filed a petition for a citation to discover assets in the Pro-

bate Court of Rock Island County against the defendants-appellants, Uptown National Bank of Moline, Sherman S. Ely, President of the bank, and Andrew Voss, seeking to obtain the proceeds of a nonnegotiable savings certificate of deposit in the principal sum of $10,000 with interest, which certificate of deposit had been issued by the Uptown National Bank, "payable to Cecle C. Voss, 4540–13th Avenue, Rock Island, Illinois, P.O.D. (payable on death to) Miss Pamela L. Dudley." The defendants' answer denied they held any property to which the minor or her guardian were entitled. A judgment was entered in the Probate Court in favor of the plaintiff-appellee and against the defendants Uptown National Bank and Andrew Voss for the amount of the certificate, with interest. An appeal was taken to the Circuit Court of Rock Island County by the defendants-appellants and upon a trial de novo that Court also entered a judgment for the plaintiff-appellee against the same defendants. From this judgment the defendants appeal to this court.

Some of the facts are in dispute, but the essential evidence indicates that Brendon Regina Dudley is the mother of Pamela Lynn Dudley, who is a minor child of Brendon and a predeceased nephew of Cecle C. Voss (or Cecle Voss' sister). Cecle C. Voss is the wife of Andrew Voss, a defendant. She was afflicted with cancer of the skull and had been ill for about a year and a half before her death on July 21, 1958. Mrs. Voss was fond of Pamela Dudley and sometime previous to July 11, 1957, she had established a $60,000 trust fund for Pamela. On July 11, 1957, Cecle C. Voss purchased a $10,000 nonnegotiable savings certificate of deposit at the Uptown National Bank and had it made payable to herself, giving her address, "P.O.D. Miss Pamela L. Dudley." Mr. Ely, of the bank, testi-

517

fied it was made out according to Mrs. Voss' directions in the same way as she had made out government bonds, with the payable on death provision. Cecle Voss retained the certificate in her own private possession. Thereafter, in December, 1957, at the Voss residence, Cecle Voss told Brendon Dudley she had purchased a certificate of deposit in the sum of $10,000 for Pamela Dudley, inscribed "P.O.D." to Pamela, and asked Brendon Dudley to ascertain the meaning of those letters "P.O.D." After consultation with an attorney and Mr. Ely, of the bank, the phrase "(payable on death to)" was written out in full, following the letters "P.O.D." Brendon Dudley, at Mr. Voss' request, took the certificate to the bank for that purpose and returned it to Mrs. Voss, Mrs. Voss not being able to go to the bank. The certificate bore interest at three per cent per annum, payable each six months upon surrender of the certificate, and was due 12 months from its issue. Mrs. Voss continued to retain the certificate of deposit in her possession until sometime in May, 1958, when, just before she left her home to go back to the hospital, Mrs. Voss in her own home gave Brendon Dudley a bundle of papers and other things, which Mrs. Dudley said Mrs. Voss described as "important family things, family papers," and asked Mrs. Dudley to keep them. It appears now that the certificate of deposit was among the items in the bundle. At that time, however, the contents of the bundle were unknown to Mrs. Dudley, and at that time the certificate of deposit was not endorsed or assigned by Mrs. Voss. Amongst the papers were documents relating to a divorce of Mrs. Voss' sister, documents relating to a previous divorce of Mrs. Dudley's deceased husband, a family Bible, various papers of people that were deceased, etc. There is no specific evidence that Mrs. Voss herself knew the certificate of deposit was in the bundle of papers at that time—the best that can be said

518

as to that, from the plaintiff's point of view, is that the record is obscure on that point. Subsequently Mrs. Voss was confined in a hospital. Andrew Voss, her husband, at the end of June, 1958, complained to Brendon Dudley that Mrs. Voss' money was all gone and a certificate of deposit was missing. Mrs. Dudley said she did not think she had it. She testified she did not know she had it, but then looked among the "pile of things Mrs. Voss had asked her to care for" and found the certificate of deposit and brought it to Mr. Voss at his home the next day, along with the family Bible which had also been in the bundle. Mr. Voss said Mrs. Dudley said she did not know she had the certificate. On July 3, 1958, Mr. Voss took the certificate of deposit to Mrs. Voss in the hospital for her to endorse it and she asked him to endorse it for her and take it to the bank as she was not able to do it herself. On that same day the certificate of deposit was endorsed "Cecle C. Voss" by Andrew Voss and surrendered to the bank by Mr. Voss and the proceeds, including interest to date, were placed in the joint bank account there of Mr. and Mrs. Andrew Voss. Evidently at the same time Mr. Voss had signed Mrs. Voss' name to a letter to the bank—a so-called certificate of necessity—requesting the cashing of the certificate prior to its normal maturity date. Mrs. Dudley testified that she gave Andrew Voss the certificate of deposit to hold because he was trustee of the previously mentioned trust fund for Pamela and he had stated that he had to have that certificate for the trust fund. Cecle Voss died, as indicated, July 21, 1958. Brendon R. Dudley was appointed guardian for Pamela L. Dudley, the minor, December 2, 1958.

The Circuit Court, though expressing serious doubts as to an effective delivery, held that there was a sufficient delivery of the certificate of deposit to Mrs. Dudley in May, 1958, to make a gift inter vivos com-

519

plete at that time to Pamela, as the donative intent was considered to be clearly manifested, and acceptance would be presumed, and the fact that the mother, Brendon Dudley, subsequently returned the certificate to Andrew Voss did not affect a delivery once effectively made.

The defendants-appellants urge that no gift or other rights were vested in Pamela L. Dudley, either before or after the death of Cecle C. Voss; the "payable on death" provision is a nullity; by the terms of the certificate of deposit the rights of Pamela L. Dudley were deferred until the death of Cecle C. Voss, thereby negating any effective gift; there was no present interest or right in Pamela L. Dudley unrelated to the death of Cecle C. Voss; and the certificate of deposit was the exclusive property of Cecle C. Voss until her death.

The plaintiff-appellee urges that (1) a valid and effective gift of the certificate of deposit could be and was made to Pamela Lynn Dudley by Cecle C. Voss in May, 1958, when the certificate of deposit was delivered to Brendon Regina Dudley, the mother of Pamela Lynn Dudley, for Pamela, and (2) the certificate of deposit, issued by the Uptown National Bank of Moline, Illinois, made payable to Cecle C. Voss, payable on death to Pamela Lynn Dudley, is, as a matter of law, a contract between Cecle C. Voss and the bank partially for the benefit of a third party, namely, the designated beneficiary, Pamela Lynn Dudley, upon which a right of action accrues to the third party to force the promisor, the bank, to render the promised performance to the third party donee-beneficiary.

A gift is a voluntary, gratuitous transfer of property by one to another. To constitute a legally effective gift inter vivos there must be an intent by the claimed donor to make such a gift, an absolute and

irrevocable delivery of the property to the claimed donee or the claimed donee's agent or trustee, with the intention of presently vesting the title and the immediate right of possession absolutely and irrevocably in the claimed donee, without restrictions, the claimed donor parting with all present and future dominion, power, and control over the property, and acceptance by the donee, but if the delivery is absolute and un-conditional, so that the claimed gift takes effect at once, the acceptance of the donee may be implied. The transaction must be fully consummated during the life of the claimed donor. Intention, alone, by the claimed donor to make such a gift is not enough to make an effective gift. Delivery, alone, without an intent to pass title and possession, is not enough. A delivery to a third person as the agent of the donor, not as the agent or trustee of the donee, is not a suffi-cient delivery. If the claimed gift is not fully con-summated, completed, and executed during the life of the claimed donor his decease revokes any part there-of, if any, which has been performed and necessarily terminates and makes impossible any subsequent con-summation thereof. The law never presumes a gift. The burden of proving all facts required for a valid gift inter vivos is on the claimed donee. To sustain the claimed gift the proof must be clear, satisfactory, unequivocal, and convincing—there should be no un-certainty as to either the claimed intent or the claimed delivery. If a claimed gift does not take effect as an executed and completed transfer to the claimed donee during the life of the claimed donor it is an attempted testamentary disposition not valid un-less made by a proper will: In re Estate of Meyer (1942) 317 Ill. App. 96, 45 N.E.2d 495; In the Matter of the Estate of Warden v. Pelling (1939) 299 Ill. App. 353, 20 N.E.2d 143; In re Estate of Huston

521

(1943) 319 Ill. App. 361, 49 N.E.2d 289; In re Estate of Waggoner (1955) 5 Ill.App.2d 130, 125 N.E.2d 154; Rothwell v. Taylor (1922) 303 Ill. 226, 135 N. E. 419.

In Basket v. Hassell, Admr. (1882) 107 U. S. 602, 27 Law Ed. 500, H. M. Chaney was the owner and holder of a certificate of deposit issued by a bank, reciting that he had deposited certain funds therein, "payable in current funds, to the order of himself, on surrender of this certificate properly endorsed." At his home, during his last illness, and in apprehension of his decease, Chaney endorsed the certificate of deposit on the back thereof "Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself. H. M. Chaney." Chaney delivered the certificate to Basket. Chaney later died, without recovering from his illness. The question in this suit was whether the fund on deposit in the bank, represented by the certificate, belonged to Martin Basket, by gift, or to the estate of H. M. Chaney, deceased. The trial court held it belonged to the estate of the decedent and not to Basket. The Supreme Court affirmed. The court held that a certificate of deposit is a chose in action and represents the fund it describes, and a proper delivery of it, as a gift, with or even without an endorsement, may constitute an equitable assignment of the money for which it calls and a transfer of the title and interest of the donor in the fund and may constitute a valid gift. It must be so delivered, however, to the claimed donee as to vest him with an equitable title to the fund it represents and as to divest the claimed donor of all present control and dominion over it, absolutely and irrevocably. A delivery which does not confer upon the claimed donee the present right to reduce the fund into actual possession by enforcing the certificate

of deposit according to its terms, will not suffice. A delivery which confers upon the claimed donee power to control the fund only after the death of the claimed donor is testamentary in character and is not good as a gift. Martin Basket, the claimed donee, acquired no title to the fund represented by the certificate of deposit. The endorsement qualified, limited, and restrained the authority of the claimed donee in the collection of the money, so as to forbid its payment until the claimed donor's death. The property in the fund did not presently pass, but remained in the claimed donor, and the claimed donee was excluded from its possession and control during the life of the claimed donor. There was no delivery of possession. The supposed gift was to take effect only upon the death of the claimed donor. It was not a present executed gift, but a testamentary disposition. The claimed donor's title and interest in the fund were not transferred. The condition annexed to the claimed gift was a condition precedent which must happen before it became a gift, and since the contingency is the claimed donor's death the claimed gift cannot be executed in his lifetime, and, hence, can never take effect.

In Barnum v. Reed (1891) 136 Ill. 388, 26 N. E. 572, Mary L. Davis owned certain notes and certain certificates of deposit issued by a bank payable to her order. She sent them, and certain cash to Mr. Barton, her attorney, saying, in part, in her letter: "I wish you to take enough of the interest money (soon payable) and the $50 which you will find enclosed, to bring the new certificate up to $2000, and if I am dead, . . . draw it in my sister's name, Mrs. Permelia Estes Reed, and send the interest, and the notes, and interest on them, to her, as long as they continue, and when they are paid, put them in the bank and send

523

the interest to her." Mary Davis died a week afterwards. The question here was whether the notes and certificates of deposit were the property of Permelia Reed, by gift, or of the decedent's estate. The trial court held they were the property of the estate; the Appellate Court reversed; and the Supreme Court reversed the Appellate Court. After stating certain of the principles we've heretofore set out, the Court held the decedent had not conveyed title either to Mr. Barton or Permelia Reed; she had no intention to give up control of the property prior to her decease; if Permelia Reed was to have any interest in the property it was to commence in futuro,—after the decedent's decease; the interest of Permelia Reed was uncertain and not clearly defined; and there was no valid gift.

We will now, with reference to whether there was here an intent to make an inter vivos gift and an effective delivery of the certificate of deposit, apply those rules of law as set forth in the foregoing cases. In the present case we find the certificate of deposit was made payable by the decedent to herself "P.O.D. (payable on death to) Miss Pamela L. Dudley." This, alone, restricted Pamela L. Dudley in the collection of the money evidenced thereby until the death of Cecle Voss. Pamela, or her guardian, could not, under the terms of the certificate, have collected the money thereon during the life of Cecle Voss. Cecle Voss was evidently familiar with the phraseology "P.O.D." or "payable on death," having used it before in certain government bonds, having had it particularly explained here by a lawyer and Mr. Ely, of the bank, and having had the words "(payable on death to)" written out thereon in full after the abbreviated letters "P.O.D." and presumably that phraseology expressed her intent, or is strong evidence of her intent. But she continued to keep the certificate in her posses-

sion from its issuance, July 11, 1957, to sometime in May, 1958. Then in May, 1958, just before she left home to go back to the hospital she gave Brendon Dudley, Pamela's mother, a bundle of papers and other things which Cecle Voss described as important family things, family papers, and which Brendon Dudley referred to as the pile of things Mrs. Voss had asked her to care for, and which included various documents relating to some divorces, a Bible, some deceased parties' papers, etc., and she asked Brendon to keep them, or, as Brendon says, care for them. The certificate of deposit was in the bundle of papers, but Brendon Dudley did not know it was there. Cecle Voss either did not know it was there or it is obscure and uncertain whether she knew it was there, and it was not endorsed or assigned by her. Although endorsement or assignment may not have been essential if there otherwise was a perfected, executed gift inter vivos, the absence of endorsement or assignment by Cecle Voss is a significant and important evidence of no gift where the question of gift or no gift is in doubt; mere physical possession at one time by Brendon Dudley is not alone sufficient to prove a valid gift; an acquisition of physical possession without an intent by the owner to pass title and right to possession is not an effective delivery: Rothwell v. Taylor, supra. And the certificate at that time still remained in its original form—"P.O.D. (payable on death to) Miss Pamela L. Dudley"—which, alone, is inconsistent with a complete relinquishment in praesenti, inter vivos, by Cecle Voss of all dominion or control over the same. Later Brendon Dudley returned the certificate to Mr. Voss, who took it to Mrs. Voss at the hospital, and he, at Mrs. Voss' request, endorsed her name thereon, surrendered it to the bank, and the proceeds, with interest, were placed in their joint bank account. There is nothing to indicate Mrs. Voss was not aware

525

that she was dealing with the certificate of deposit at that time and was asking Mr. Voss to do the mechanical job of endorsing and cashing it for her at the bank, which she was not physically able to do herself.

A general donative intent of the character here evidenced is quite different from, and opposed to, an intent to make a gift inter vivos, which is the type of intent required to sustain a claimed gift inter vivos. There was no absolute and irrevocable delivery of the property to Pamela or to Brendon Dudley as Pamela's agent, with the intention of presently vesting the title and immediate right of possession absolutely and irrevocably in Pamela, without restrictions. The title and property in the fund represented by the certificate did not presently, inter vivos, pass, but remained in Cecle Voss. If Pamela was to have a title and interest in the fund such was to commence in futuro. This was not a present, executed gift but in the nature of a testamentary disposition. The condition precedent to this becoming a gift was the decease of Cecle Voss, and since the condition could not be executed in Cecle Voss' lifetime the intended gift can never take effect. Cecle Voss' later acts during her lifetime in dealing with the certificate, having it endorsed and cashed or deposited at the bank, with the accumulated interest income thereon, in her and her husband's bank account, and thus, in effect, benefitting from the same, are further evidence, by practical, contemporaneous construction, of her intention, meaning, and understanding that she was and continued to be during her lifetime the sole owner of the certificate and that the title and right to possession of the funds represented thereby had not passed from her to Pamela.

Simpson v. Heberlein (1931) 259 Ill. App. 579, In re Estate of Trapp (1933) 269 Ill. App. 269, Martin

v. Martin (1898) 174 Ill. 371, 51 N. E. 691, Merrill v. Merrill (1914) 187 Ill. App. 589, Poirot v. Gundlach (1936) 284 Ill. App. 349, 1 N.E.2d 801, and In re Estates of Antkowski (1936) 286 Ill. App. 184, 3 N.E.2d 132, are representative cases suggested by the plaintiff. They state or reiterate many of the principles we've referred to, but are inapplicable on their facts to the present case and do not militate against our views.

 ██ The burden of proving all the essential facts required for a valid gift inter vivos of this certificate of deposit was on the claimed donee, Pamela L. Dudley, or her guardian, the plaintiff. We do not believe the proof adduced to sustain a claimed gift inter vivos is clear, satisfactory, unequivocal, and convincing. There is, at least, uncertainty as to the claimed intent of Cecle Voss and as to the claimed delivery by Cecle Voss.

The plaintiff's claim cannot, therefore, be sustained on a gift inter vivos theory.

 The plaintiff-appellee argues next that this certificate of deposit is a partially third party beneficiary contract between the bank and Cecle Voss, the depositor, with Pamela L. Dudley as the third party beneficiary, citing McCormick v. Hopkins (1919) 287 Ill. 66, 122 N. E. 151, to the effect that a bank certificate of deposit is a contract between the bank and the depositor, and Franklin Washington Trust Co. v. Beltram (1943) 133 N. J. Eq. 11, 29 A.2d 854, and In re Estate of Di Santo (1943) 142 Ohio St. 223, 51 N.E.2d 639, the latter two cases holding that a United States Savings Bond payable to a named payee and payable on death to another is a third party beneficiary contract, and is not of a testamentary character. We have examined the other Illinois cases the plaintiff cites on this, but the plaintiff refers us to no Illinois or other cases holding that a bank cer-

527

tificate of deposit such as here involved, though a contract, may be a third party beneficiary contract, or applying that theory to such certificates under circumstances like those here presented, and it is to be observed that there is a statute, Ch. 76, Ill. Rev. Stats., 1957, par. 2, particularly applicable to nontransferable U. S. Savings Bonds payable to a designated person and upon his death to another person. It is not necessary to determine that general question at the present time because even if those New Jersey and Ohio cases cited were otherwise applicable to the present situation they would apply only if the certificate were outstanding in its original form at Cecle Voss' decease— only if there had been no legal reduction of the certificate to cash or other legal material change in the certificate by the other payee, Cecle Voss, during her lifetime. If this certificate of deposit was a contract partially for the benefit of a third party, Pamela Dudley, upon a certain event, it was partially or primarily for the benefit also of the payee Cecle C. Voss, and Cecle Voss remained the sole owner thereof during her lifetime and was entitled to deal with it as her property, subject only to the provision that if she did not otherwise deal with it in her lifetime it might on her death be payable to Pamela L. Dudley upon the theory of a third party beneficiary contract. It appears clearly that this certificate was, under the circumstances here, lawfully surrendered and reduced to cash before Cecle Voss' death by her or on her behalf and at her request. She, as its owner-payee, had the right to do so if she so desired. Pamela L. Dudley, even if a third party beneficiary contract theory were otherwise applicable, had no vested rights to the contrary during Cecle Voss' lifetime. The relationship of principal and agent may not necessarily spring from that of husband and wife or be presumed from the

husband-wife relationship alone, and an agency cannot be created by the mere declarations of the agent: Wallace v. Monroe (1887) 22 Ill. App. 602, Boyd v. Jennings (1892) 46 Ill. App. 290, as the plaintiff urges. But Cecle Voss, the principal, herself, asked Mr. Voss to endorse the certificate and take it back to the bank—she told him to sign it because she was not able to do it herself. Mr. Voss so testified. There is no testimony to the contrary. The plaintiff did not object to his testifying or to the testimony he gave. The agency to endorse this certificate or reduce it to cash does not rest on the mere relationship of husband-wife or the mere declarations of the agent. It rests on the specific instructions of the principal herself, testified to by the only witness who knows, and to whose testimony the plaintiff made no objection whatever. The certificate necessarily thereupon became functus officio and extinct. Pamela Dudley necessarily did not thereafter have any rights therein, notwithstanding and assuming she might have had rights therein on and after Cecle Voss' death, under a third party beneficiary contract theory, had the certificate been and remained still in effect and outstanding at that time in its original terms. But it was not. It had, lawfully, ceased to exist.

The plaintiff's claim cannot, therefore, under the circumstances, be sustained on a third party beneficiary contract theory, assuming the theory might otherwise have been applicable.

The judgment is, therefore, we believe, contrary to the manifest weight of the evidence and the law, and is reversed and the cause remanded, with directions to enter a judgment for the defendants-appellants.

Reversed and remanded, with directions.

SOLFISBURG, P. J. and WRIGHT, J., concur.